GATES *versus* M'DANIEL.

QUESTION IN THIS CASE.

*Relative to attachment, for contempt of Court, by breach of injunction.*

1. The Circuit Courts are vested with authority to punish a contempt, committed in the breach of an injunction, granted by a judge thereof---where such injunction has been dissolved on hearing, and it has been reversed, and again re-instated, by the judgment of the Supreme Court, on error.
2. Where contempts are committed, by violation of an order or decree of Chancery, the English practice, in such cases, should be adopted here.
3. This practice is, not to direct a seizure of the body, *in the first instance*, but to give notice that a motion will be made, that the party guilty of the contempt, stand committed: and if not ready to show cause, the court usually gives day; and then, on a hearing of the affidavits on both sides, decides.
4. A judge of the Circuit Court, has no authority, in vacation, to order the body of a defendant to be taken, on a charge of having violated an injunction.
5. But where such order has been made on a petition, supported by affidavits, showing a *prima facie* case of contempt; the Circuit Court can not rescind it, without a rule, that the defendant stand committed, unless, on day given, he shew cause.

On the 20th February, 1830, Samuel Gates petitioned the judge of the sixth judicial circuit, for process, against Thomas M'Daniel, for having violated an injunction. The petition represented, that before that time, the said Gates had filed a bill in the Chancery Court of Covington, to restrain the said M'Daniel from the use of a bridge, built by him, near a ferry of the said Gates, established by proper license: that, on a final hearing, the injunction obtained by

him, was dissolved, and the bill dismissed.   That afterwards, the said Gates sued out a writ of error, to the Supreme Court, where the decree of the Circuit Court, dissolving the injunction and dismissing the bill, was reversed, and the injunction reinstated and perpetuated.   That all these matters had been notified to the defendant; but that he, disregarding the said injunction, had opened the said bridge, and suffered and permitted the use thereof, in violation and contempt of the injunction aforesaid.   He, therefore, prayed an order to the sheriff, directing him to take the body of the said M'Daniel, and him keep, until he should give bond and security, to abide by the injunction, &c.

Upon this prayer, the judge, in vacation granted an order, in conformity therewith, and the body of the defendant was taken; and he gave bond.

At a term of the Circuit Court, afterwards held, on motion, it was ordered, that the above order, for taking of the body of the defendant, be rescinded: and thereupon, the plaintiff in error took his writ, from this Court.

*Porter*, for the plaintiff in error; *Mr. Wilson*, for the defendant.

COLLIER, J.—The plaintiff in this Court, (who was plaintiff below,) presented his petition, sustained by two affidavits, to the judge of the Circuit Court of Covington, stating that the defendant had committed a breach of an injunction, issued at his instance, against the defendant; and praying that an order might be made, directing that his body might be taken and detained, until he should enter into bond,

with adequate penalty, to perform, keep, &c. the orders and decrees of the Court, made in that case.— On the petition, the judge made an order, substantially conforming to its prayer.

The questions of law, which the facts of this case, seem to present, are—

First—Had the Circuit Court of Covington, jurisdiction of the contempt, with which the defendant is charged?

Second—Was the petition with the affidavits, and the order of the judge made thereupon, in vacation, conformable to the practice in such cases?

Third—Was the decree of the Court, dismissing the order for an attachment, (without making any other,) regular and proper?

1. In respect to the first point, it may be remarked, that the power to enforce its own process, and to vindicate contempts of its authority, is one inherent in courts of justice : otherwise, the law, and its judges would be unceasingly visited with contumely and disrespect—the one utterly powerless, and the other incapable of imparting to its influence.[a]

<span>a Wilmot's Opin. 257-8, et post.; 3 Term R. 253;—2 ib. 643; 7 ibid 439. 527; 3 Blac. 285 ; Hawk. P. C. bk 2§33; 4 Just. 23 ; Sul.L.494; 1 Dal.15; 6 John. 337 ; 9 ib. 395; 2 Va. Cases, 408</span>

Assuming this proposition as a postulate, it is material to ascertain whether the process or authority of the Circuit Court or its judge has been contemned. An application was made, by the plaintiff, for an injunction, to the judge of that court, who granted it, and it was issued, accordingly. Upon the cause coming on for hearing, the injunction was dissolved, and the bill dismissed. A writ of error having been prosecuted to this court, the decree of dismissal was reversed, the injunction re-instated and perpetuated. The effect of the decree of the Circuit Court, so long as it remained unreversed, ab-

solved all persons from the restraint imposed by the injunction. But so soon as that decree was reversed, the injunction revived, and acquired all its original influence : the order of the Judge, which had been superseded, & temporarily vacated, received strength and become operative. And having thus, its efficiency renewed, it stood as it did before its vacation—an order of the Circuit Court. It will be recollected, that this Court did, what the Circuit court should have done, and nothing more : and had it decreed any thing beyond reinstating and continuing the injunction, which it would be a contempt to disregard —such a contempt, it is possible, could only be punished here ; for the reason, that it would be no offence against any other tribunal. Not so, when the injunction itself is set at nought : that having issued from the circuit court, and being approved by this court, disobedience to its restrictions, may with propriety, be punished there.

2. The practice in this State is, where it is made to appear, by affidavits, to a Judge in vacation, that an order or decree in a chancery cause has been violated, for the Judge to make a suitable order with a view to the trial and punishment of the contempt, at the succeeding Court. And the proceeding is understood to be authorised by the constitutional provision, which invests the Judges of the Circuit Courts with chancery jurisdiction, and perhaps results as a consequence, from the act of the Legislature, which confers the power to award writs of injunction and *ne exeat*.

We have no statute or rule of Court, prescribing the manner in which parties shall be proceeded against for contempts, in cases such as this ; but are

referred, by the 26th rule of Chancery Practice, in cases not provided for, to the rules of practice in the English Chancery, so far as they are compatible with our laws and rules of Court. By a reference to this source of information, we learn, that the practice in England, at the present day, is not to direct a seizure of the body, in the first instance, but to give notice that a motion will be made against the party charged with a contempt, *that he stand committed;* and if he is not prepared to defend the motion, the Court usually gives a day to shew cause against it; and then, after hearing affidavits on both sides, decides whether the party is guilty of the breach; and makes such order as may seem to be demanded.[a]

[a] Eden on Inj. 56.

It may be remarked, that in England, the Court of Chancery is considered as always open, with ample power to maintain its authority; while according to the organization of our Courts, we have certain prescribed terms for the despatch of business. The initiatory step, it is true, may be taken in vacation, but the matter must be definitely acted on in Court.

In the absence of any positive regulations of our own, we are constrained to adopt the English mode of procedure. The order made in vacation, in this case, does not conform to it, but directs the issuance of process for the seizure and detention of the defendant's body, until he execute bond with surety in a prescribed penalty. Such order would operate the severest oppression, if made against one who was guiltless, should he be unable to find sureties—and in our view, is indefensible.

3. It remains then, but to enquire, whether the decree of the Circuit Court, disposing of the proceeding for a contempt, is erroneous.

The petition discloses a clear case of contempt, which is *prima facie* made out by the affidavits. These being all before the court, such order should have been made as they required; which was a dismissal of the order of the Judge, and the entry of a rule, tnat the defendant *stand committed*, unless on a day given, he shew good cause to the contrary.

The failure of the court thus to dispose of this proceeding, is, in our opinion, an error; for which, the judgment must be reversed, and cause remanded.