# Ex parte STICKNEY et al.

### [APPLICATION FOR PROHIBITION TO CIRCUIT COURT.]

1. *Attachment for contempt.*—When a stranger to a pending suit interferes with the property in controversy while it is in the custody of the law, the circuit court has jurisdiction to make an order, requiring him to be taken into custody by the sheriff, and to be retained in custody until he shall have delivered the property to the sheriff, and paid the costs of the rule against him; and he cannot purge himself of the contempt by setting up the invalidity of the levy on the property, or showing that the court had no jurisdiction of the particular case.

2. *When prohibition lies.*—The writ of prohibition being an extraordinary remedy, to be resorted to only when there is no other remedy, and to be issued at the discretion of the court, it will not be awarded to the circuit court, at the instance of a stranger to a suit there pending, to vacate a rule for contempt against him on account of his interference with the property in controversy.

APPLICATION by H. G. Stickney, William Owens, H. C. Caulkins, and J. W. Bennett, for the writ of prohibition, or other remedial process, to be issued to the circuit court of Montgomery, for the purpose of vacating and setting aside an order made by that court at its December term, 1865, (Hon. F. BUGBEE presiding,) in the matter of an alleged contempt. The material facts of the case, as shown by the transcript, which was made an exhibit to the petition, are these:

On the 10th day of July, 1865, an attachment was issued by J. H. Nettles, a justice of the peace in and for Montgomery county, at the suit of E. H. Wilson, against the Bank of Louisiana, a corporation chartered under the laws of Louisiana. The attachment was issued by said Nettles, under the authority of an order from Major-General A. J. Smith, who was then in command of the sixteenth corps of the United States army, with his head-quarters at Montgomery; which order was directed to said Nettles, as a justice of the peace, authorized him to issue an attachment in the case named, "and to appoint the necessary bailiffs to

execute the necessary process, levying the same upon any property of said bank within your" [his] "jurisdiction, upon proper affidavit and bond being filed"; and directed him to "make the writ returnable to the first properly organized court under the laws of the United States, having jurisdiction in such cases." The ground on which the attachment was sued out, as stated in the plaintiff's affidavit, was, that the defendant had not sufficient property in Louisiana with which to satisfy the plaintiff's debt; and the usual statutory bond was given. The attachment was made returnable to the next term of the circuit court of the county, and W. H. Ogbourne was appointed bailiff by said Nettles, under the authority of General Smith's order, to execute and return it; and it was levied by said bailiff on one hundred and ninety-eight bales of cotton, which were then stored on the plantation of Julius C. B. Mitchell in said county.

The cotton on which said attachment was levied was sold by said Mitchell, in the fall of 1862, to an agent of the said Bank of Louisiana, at fourteen cents per pound; and the price was paid in treasury-notes of the Confederate States. The contract of sale was made in Montgomery, and the price paid was the market value of the cotton at the time. "When said sale was made, said Mitchell agreed with said agent to put said cotton under a good shelter, and to hold and keep it for said bank, under a good shelter, until called for by said bank, and then to haul it to any ware-house in the city of Montgomery that might be designated by said bank or its agent; for which just compensation was to be made to him." At the time this contract was made, New Orleans was held by the military forces of the United States. On the 6th December, 1865, Mitchell sold all his "interest" in said cotton to E. C. Avery, J. C. Harris, and H. C. Caulkins, at the price of ten thousand dollars in treasury-notes of the United States, which was about one-fourth of its value; the said purchasers being informed at the time of all the facts connected with the former sale. Said Avery, Harris, and Caulkins, being advised by their attorneys to take possession of the cotton, if they could obtain it without resistance, sent their agents, with wagons,

to said Mitchell's plantation, on the 12th December, 1865; and said agents, meeting with no resistance from the person who was in charge of the cotton, placed seventy-three bales on their wagons, hauled them to Montgomery, and stored them in the ware-house of W. D. Carpenter & Co. J. W. Bennett acted as the agent of said purchasers in removing and storing the cotton, and received from Stickney and Owens, who were the keepers of the ware-house, the usual ware-house receipts, which he delivered to said Caulkins.

The plaintiff filed his complaint in the attachment suit on the 25th November, 1865. On the 6th December, 1865, a day of the next regular term of the court, Messrs. Martin & Sayre, as *amici curiæ*, moved the court for a rule against the plaintiff, to show cause why the attachment should not be dismissed, on the ground that said Nettles had no authority to issue it; also, to dismiss the levy, on the same ground; and for a rule against the bailiffs who had made the levy, "to show cause why they will not allow the defendant to replevy the cotton levied on"; which several motions the court overruled and refused. On the same day, on motion of Martin & Sayre as *amici curiæ*, the court made an order directing the bailiffs to place the cotton in the possession of the sheriff; and, on motion of the plaintiff, ordered a sale of the cotton by the sheriff, as perishable property. On the 15th December, 1865, the following order was made in the cause:

"This day came into open court, before the court now here, Edward H. Wilson, by his attorneys, and moved the court for the issue, forthwith, of a rule against H. G. Stickney, William Owens, H. C. Caulkins, and J. W. Bennett, to show cause why an attachment should not issue against them for a contempt of this court, its order, process, and authority. And it being made to appear to the court now here, by competent proof, that the said H. G. Stickney, William Owens, H. C. Caulkins, and J. W. Bennett, have in their possession seventy-three or more bales of cotton, of great value, to-wit, of the value of thirty thousand dollars, which said seventy-three or more bales of cotton, with other cotton, were levied upon by W. H. Ogbourne, a spe-

Ex parte Stickney et al.

cial bailiff in that behalf duly and legally appointed and authorized, on the 11th day of July, 1865, by virtue of, and in obedience to an attachment, at the suit of Edward H. Wilson, against the Bank of Louisiana, a corporation organized under the laws of the State of Louisiana; which attachment, with the levy thereon endorsed, is now in this court, and to which, with the proceedings thereon had by this court, sanctioning said levy, and ordering said cotton to be turned over to the sheriff of this county, and to be by him sold, are hereby referred to for greater certainty; and which attachment is still pending and undecided: And it being further made to appear to the court now here, that while said cotton was in the custody of the law, in the possession of said Ogbourne as special bailiff, by virtue of the levy under the authority aforesaid, and before he had complied with the order of this court, (the said cotton being then at the residence of Julius C. B. Mitchell, in said county of Montgomery,) the said seventy-three or more bales were taken, in contempt of the authority of this court, out of the legal custody of said Ogbourne, and are now held by the said Stickney, Owens, Caulkins, and Bennett, who retain the same, and refuse to deliver them to the said Ogbourne, or to A. H. Johnson, the sheriff of Montgomery county, in contempt of this court; so that, in virtue of such contemptuous conduct of the said Stickney, Owens, Caulkins, and Bennett, in detaining, holding, and refusing to deliver said cotton, either to said sheriff, or to said Ogbourne, that he may deliver the same to said sheriff, the orders of this court, made in said cause, requiring said Ogbourne to turn over said cotton to said sheriff, and requiring said sheriff to return the facts to this court, and to sell said cotton so turned over to him, cannot be carried out: And the court being fully informed, by competent proof, that the said Stickney, Owens, Caulkins, and Bennett, by unlawfully detaining the said cotton, and refusing to turn the same over as aforesaid, are guilty of unlawful interference with the proceedings of this court, and are in contempt of its authority, process, and commands: It is therefore ordered and adjudged, that a rule issue, requiring the said H. G. Stickney, William Owens, H. C. Caulk-

ins, and J. W. Bennett, forthwith to appear before this honorable court, and show cause, if any they have, why an attachment should not issue against them for the contempt aforesaid."

The next minute-entry in the record, dated December 30, 1865, recites that the *defendants* in the rule appeared, in person and by attorney, " and moved the court to quash the rule served upon them in this case, for defects apparent on its face; which motion, having been duly considered by the court, was overruled; and thereupon said defendants filed their demurrer to said rule; and the said demurrer, and the causes therein assigned, having been considered and fully understood by the court, it is considered by the court, that said demurrer be, and the same is, disallowed and overruled." The demurrer, as copied into the transcript, purports to be filed by only three of the defendants in the rule, the name of Caulkins being omitted; and the grounds of demurrer therein assigned are—"1st, because it does not appear from said rule, or from the record in said cause, or from any of the proceedings of said court, or from any affidavit therein, that they have been guilty of any contempt of said court, its order, authority, or process, or that any matter has been averred or charged against them, or either of them, which could give said court jurisdiction to proceed against them, or either of them, for contempt; 2d, because said court has no jurisdiction to require them, or either of them, to answer as for a contempt, or on account of the matters set up and alleged, or recited in said rule."

After the overruling of their demurrer, a joint answer was filed by Stickney, Owens, and Bennett, in which they averred, on information and advice, that the Bank of Louisiana had no valid claim to the cotton; that the attachment was never levied on said cotton, either in fact or in law; that the cotton was never in the possession of said Ogbourne as bailiff, nor of the sheriff of said county; that it was not taken from the possession of either of them; that said Ogbourne never had authority, as special bailiff or otherwise, to seize, levy on, or take possession of said cotton; that the cotton was hauled to Montgomery, in

wagons sent out by said Avery, Caulkins, and Harris, who acted under legal advice; that the son and agent of the plaintiff, who was also the agent of Ogbourne, was present at the removal, and interposed no objection; and that it was stored in the ware-house of W. D. Carpenter & Co., which was kept by said Stickney and Owens, by the directions of the said Avery, Caulkins, and Harris. Bennett further answered, that he had delivered the ware-house receipts to said Caulkins, as one of the parties for whose benefit the cotton was stored, and that he had neither the possession nor the control of either the cotton or the receipts, and claimed no interest in either. Stickney and Owens further answered, that the receipts which they had given for the cotton, specified on their face that the cotton was to be delivered on the production of the receipts; that they were advised by counsel, if they delivered the cotton to either Ogbourne or the sheriff, that they would thereby render themselves liable for its value to the parties who held the receipts; that they had no interest in the cotton, except a claim for storage, which neither Ogbourne nor the sheriff offered to pay; and that they held themselves ready to deliver the cotton to the parties entitled, on the production of their receipts, and the payment of their claim for storage. Caulkins adopted the answer of the other defendants, and further averred that he claimed and held the cotton, as joint owner with said Avery and Harris, under a title which they were advised was legal and valid.

A further answer was filed by the four defendants jointly, which, as set out in the record, purports to have been sworn to by them, before the clerk of the court, on the 29th December, 1865, and which contained the following averments: "When said cotton was demanded of said defendants, on or before the 18th December inst., they did not know that said orders had been made, requiring said Ogbourne to turn over said cotton to said Johnson, and requiring said Johnson to sell said cotton. On or before the 18th December inst., when said rule was first issued, said Ogbourne did demand fifty-two bales of said cotton from said Bennett, Owens, and Stickney; but he did not disclose to them in what character, or by what right, he

demanded the same. On the 27th December inst., another demand of seventy-three bales of cotton was made by said Ogbourne, of each of said defendants, as special bailiff, and by said Johnson as sheriff; and when said defendants heard, verbally, from said Ogbourne and Johnson, of said orders of this court, they requested said Ogbourne and Johnson to show their authority, or orders, for demanding said cotton; and said Ogbourne and Johnson, in reply to such request, stated that they had no written authority to demand said cotton. For the reasons above stated, and because they were advised and believed that neither said Ogbourne nor said Johnson had any right to demand or receive said cotton, said defendants refused to deliver the same to them on said demand. Said Caulkins further states, that he holds the ware-house receipts for said cotton by said Stickney and Owens. Said Stickney, Bennett and Owens, first heard of said orders to turn over and sell said cotton, on the argument of the demurrer to said rule, to-wit, on the 22d December inst. ; and said Caulkins first heard of said rule, from said Ogbourne and Johnson, when said last demand was made on the 27th inst. At the time said cotton came into the possession or control of said defendants, or either of them, they did not know that said court had made any order requiring said Ogbourne to turn over said cotton to said Johnson as sheriff, or for the sale of said cotton."

On the hearing under the rule and answer, as the bill of exceptions shows, the facts above stated were proved to the court; and it was further proved, that said Ogbourne and the sheriff, when demanding the cotton from the defendants, informed them of their official character, and of the purpose for which they wanted the cotton. The bill of exceptions·purports to set out all the evidence that was before the court on the hearing. The judgment-entry, after stating the several rulings of the court on the pleadings, proceeds thus—" And the proof having been submitted to the court as to the allegations contained in said rule, and argument being thereupon had, it appears to the court that the statements and allegations in said rule contained and set forth are fully proved, and that the said defendants

are in contempt of the authority of this court, its process, and orders, as set forth in said rule, and that said defendants have in their possession seventy-three bales of cotton, being so much of the cotton levied on, and in the possession of this court, under the levy of the said attachment of E. H. Wilson against the Bank of Louisiana, and which said seventy-three bales of cotton they refuse to deliver back to the officer of this court duly authorized to receive the same; which refusal on their part was made, and is persisted in, after a full knowledge of all the orders of this court made with reference to said cotton: It is therefore ordered and adjudged by the court, that said defendants be taken into the custody of the sheriff of the county, and that they be retained in custody by him until they shall turn over to him, as such sheriff, the said seventy-three bales of cotton, and shall pay the costs of the rule against them."

The defendants reserved an exception to the order and decision of the court; and they now apply to this court, by petition, for a writ of prohibition, or other remedial process, to vacate and annul it.

WATTS & TROY, for the motion.

GOLDTHWAITE, RICE & SEMPLE, and CHILTON & THORINGTON, *contra.*

BYRD, J.—1. This is a motion or application for a writ of prohibition, or other original and remedial writ, against the circuit court of Montgomery county, to correct or vacate an order of that court, by which the applicants are sentenced to be imprisoned for a contempt of the authority of that court, in a matter pertaining to a suit pending therein, to which they are not parties, and by which order they are to be imprisoned, "until they turn over to the sheriff seventy-three bales of cotton, and pay the costs of the rule against them."

The transcript shows that the proceeding in the court below was against the applicants for a contempt, and the judgment thereon is clearly authorized by the Code, (ch. 1, title 9, part 1,) and the common law.— *Gates v. McDaniel,* 3 Porter, 356; *Yates v. Lansing,* 9 Johns. 395; 4 Johns. 317;

*People v. Compton,* 1 Duer, 512; *Ex parte Adams,* 25 Miss. 883; *Passmore Williamson's case,* 2 Casey, 23; 3 Lord Raym. 1108; *Kearney's case,* 7 Wheat. 38; *Crossbey's case,* 3 Wilson, 183; 3 Term R. 253; 1 Dal. 15; Hawk. P. C., b. 2, § 33; 2 Va. Cas. 408. It is not shown that the applicants were actually in custody when this motion was made, nor that they were unable to deliver the cotton under the order of the circuit court. The bill of exceptions must be construed most strongly against them, and, in doubtful matters, most favorably to sustain the action of the court below. The record does not show that they were attached, or have ever been in the custody of the sheriff prior or subsequent to said order : and if it did, still they can discharge themselves by turning over the cotton, and paying the costs of the rule.—*Ex parte Cohen & Jones,* 5 Cal. 494.

A stranger to a suit, against whom a rule has issued for a contempt of court as to his conduct in reference to the orders or process made or issued in the suit, cannot purge himself of the contempt, by showing that the court had no jurisdiction of the particular suit, where the court is one of general jurisdiction, and the suit is one within the scope of its jurisdiction.—*Passmore Williamson's case,* 2 Casey, (26 Penn. R.) 31; *Clarke v. The People,* 1 Breese, 266; 1 Blackf. 166; 1 J. J. Mar. 575; 7 Wheat. 38; *Cabot v. Yarborough,* 27 Geo. 476; *Ex parte Perkins,* 18 Cal. 60; 14 Ad. & Ellis, 558; 1 Carter, 160; 4 John. 325; 6 John. 503; 9 John. 423; 5 Ired. 190, 153; 2 Sandf. 724; 1 Hill, 170; 25 Miss. 836; 2 Wheeler's Crim. Cases, 1; *Ex parte Cohen & Jones,* 5 Cal. 494.

In the case of *Passmore Williamson, supra,* Judge Black, in delivering the opinion of the court, says : " The proposition, that a court is powerless to punish for disorderly conduct, or disobedience of its process, in a case which it ought ultimately to dismiss for want of jurisdiction, is not only unsupported by judicial authority, but we think it new, even, as an argument at the bar. We ourselves have heard many cases through and through, before we became convinced that it was our duty to remit the parties to another tribunal. But we never thought our process could be defied in such cases, more than others. There are some

proceedings, in which the want of jurisdiction would be seen at the first blush ; but there are others, in which the court must inquire into all the facts, before it can possibly know whether it has jurisdiction or not.   Any one who obstructs or baffles a judicial investigation for that purpose is unquestionably guilty of a crime, for which he may and ought to be tried, convicted, and punished.   Suppose a local action to be brought in the wrong county ; this is a defense to the action, but a defense which must be made out like any other.   While it is pending, neither a party, nor an officer, nor any other person, can safely insult the court, or resist its order.   The court may not have power to decide upon the merits of the case ; but it has undoubted power to try whether the wrong was done within its jurisdiction or not. Suppose Mr. Williamson to be called before the circuit court of the United States, as a witness, on a trial for murder alleged to have been committed on the high seas ; can he refuse to be sworn, and, at his trial for contempt, justify himself, on the ground that the murder was in fact committed within the limits of a State, and therefore triable only in a State court?   If he can, he can justify perjury for the same reason.   But such a defense, for either crime, has never been heard of since the beginning of the world." The true rule seems to be, that the want of jurisdiction of the particular case, in which the contempt was committed, is no defense or justification, where the court is one of general jurisdiction, and has jurisdiction to entertain such a suit.   Some authorities go even beyond the limits of the rule as stated above.

2. If the applicants have any title to the cotton, they can return it, and bring an action to try the title in the legal and constitutional *forum*.   Writs of *mandamus* and prohibition are extraordinary, though not extra-judicial remedies, to be resorted to *only* where there is no other remedy, and to be issued at the discretion of the court. *Ex parte Greene & Graham*, 29 Ala. 57 ; *Ex parte Smith*, 23 Ala. 94; 17 Ala. R. 527; *Ex parte Walker*, 25 Ala. 81; 20 Ala. 330, 592; 24 Ala. 91 ; 26 Ala. 170 ; 28 Ala. 50 ; 29 Ala. 71.

After a court of general jurisdiction has decided that it

11

has jurisdiction of a particular case, it would, in our opinion, be a loose and unsound adjudication to hold, that if a third person could, while the case was pending, acquire an interest in the suit, that he should be permitted in any form to raise the question of the jurisdiction of the court over the subject-matter thereof, in any proceeding against him for a contempt of court in intermeddling with the subject-matter of the suit. A due respect to the orders and dignity of such a court requires a more stringent and conservative rule.—*Passmore Williamson's case*, 2 Casey, 21, and authorities cited therein; 5 Cal. 494.

These views dispose of the motion in this case, without adjudicating any question which affects the merits of the original suit, or the rights of any of the claimants to the cotton in controversy. Questions of title can scarcely, if ever, be adjudicated upon applications of this character. 11 Ala. 268 ; *Knuckles v. Mahone*, 15 Ala. 212.

It results that the motion is denied.

NOTE BY REPORTER.—On a subsequent day of the term, in response to an application by the petitioners' counsel for a rehearing, the following opinion was delivered:

BYRD, J.—After a careful examination of the application for a rehearing in this cause, we have come to the following conclusion. The case of *Cawthorn v. Knight*, 11 Ala. 268, decides, that a levy cannot be set aside, at the instance of a stranger, on the ground that the property levied upon belonged to such stranger, and not to the defendant. This decision is based upon the doctrine, that the stranger must resort to his action for any wrong done to him, and that the question of title could not be tried and determined in that collateral manner. This decision is, in our judgment, eminently wise, and we abide by it. The principle of this decision prohibits an investigation of the title to the cotton, in resisting an order for the delivery of the cotton under penalty of an attachment for contempt.

Upon the motion of the applicants, as shown on the motion docket, the court are unanimously of the opinion, that the decision heretofore rendered in this case, upon the princi-

ples announced in the opinion, and as herein before set out, fully meet all the questions raised by the applicants for a rehearing, and that the original opinion of the court contains a correct announcement of principles applicable to this case.

Let the application be denied, at the costs of the applicants.