151 So. 605

### Ex parte GUNNELS.

### GUNNELS v. GUNNELS.

### 4 Div. 38.

Court of Appeals of Alabama.

Dec. 19, 1933.

C. B. Gullatt, Jr., of Phenix City, and Frank M. deGraffenried, of Seale, for appellant.

R. Bruce Robertson, Jr., and J. B. Hicks, both of Phenix City, for appellee.

BRICKEN, Presiding Judge.

On this appeal the court has before it two records for consideration, each of which presents substantially the same question.

J. C. Gunnels, petitioner, filed in this court his application for the writ of habeas corpus, to be directed to the Honorable B. F. Burch, sheriff of Russell county, Ala., commanding said sheriff to show cause why the petitioner should not be discharged from his custody under a judgment of contempt pronounced against the petitioner by the Honorable J. S. Williams, judge of the circuit court of Russell county, Ala., in equity; in which petition the petitioner alleges said judgment to be null and void, and in which he prays that he be admitted to bail pending an appeal taken by him to this court from a judgment, or order, of said judge denying to the petitioner the writ of habeas corpus, and denying to him, also, bail pending said appeal, upon a petition presented to the said judge by said petitioner.

There is now pending in this court the appeal of J. C. Gunnels, petitioner, prosecuted by him from a judgment, or order, of the Honorable J. S. Williams, judge of the circuit court of Russell county, Ala., denying to said petitioner the writ of habeas corpus, and denying to him, also, bail pending the appeal taken by him to this court from said judgment, or order.

Both the original application for the writ of habeas corpus filed in this court and the appeal from the judgment, or order, of said judge, denying to the petitioner the writ of habeas corpus, and denying to him, also, bail pending his appeal to this court, are based upon a judgment of contempt pronounced against petitioner in a contempt proceeding commenced in the circuit court of Russell county, Ala., in equity before said Williams, as judge, wherein Mrs. Annie Dorothy Gunnels was the complainant, and J. C. Gunnels was the respondent.

The Honorable B. F. Burch, sheriff of Russell county, Ala., has made return to the writ of habeas corpus, directed to him, that was issued out of this court, which answer embraces and makes a part thereof a copy of the record in said contempt proceeding, duly certified to by the clerk of said court.

A duly certified copy of the record in said contempt proceeding is also embraced in and made a part of the habeas corpus proceeding instituted before said judge by the petitioner, from the judgment in which the appeal of petitioner is brought to this court.

Upon the submission of these causes it was agreed between the attorneys of record for

the interested parties, and, thereupon it was ordered by this court, inasmuch as the same question was presented in each cause for the consideration of this court, said causes should be consolidated, and this was accordingly done.

The records before us show that on May 2, 1933, Annie Dorothy Gunnels filed her bill of complaint in the circuit court of Russell county, in equity, against J. C. Gunnels, her husband, in which she prayed for a divorce, upon statutory grounds, and in which she also prayed for alimony pendente lite, for permanent alimony, for solicitor's fees, and for an injunction to prevent the withdrawal of certain money by J. C. Gunnels from the Phenix-Girard Bank, where said money was alleged to be deposited.

On May 2, 1933, an order was granted by Judge Williams directing the issuance of an injunction according to the prayer of complainant's bill upon her entering into bond with security in the sum of $1,000, to be conditioned according to law, and to be approved by the register of said court.

On May 3, 1933, the writ of injunction prayed for was issued out of the circuit court of Russell county, in equity and said writ was on May 4, 1933, served upon said bank, and upon the said J. C. Gunnels.

On May 9, 1933, the bill of complaint was amended, whereby the complainant sought the abatement by injunction of a detinue suit then pending in the circuit court of Russell county, and, also the abatement of a bail trover proceeding then pending in the municipal court of Columbus, Muscogee county, Ga., and both involving a certain Ford coupé automobile.

On May 13, 1933, an order was granted by Judge Williams extending the writ of injunction that had issued in said cause on May 3, 1933, by abating said two court proceedings, and the amended writ of injunction was served upon Gunnels, the respondent, on May 15, 1933.

On June 1, 1933, the respondent filed his answer in said cause, denying the material allegations of the bill of complaint, and expressly denying that he had any money in the Phenix-Girard Bank, or elsewhere, at the time he was served with the writ of injunction that issued in said cause, or had notice thereof, and before he had notice that the bill of complaint had been filed in said cause.

On July 12, 1933, Gunnels, respondent, amended his answer by making the same a cross-bill in which he prayed for a divorce against his said wife upon statutory grounds.

On July 20, 1933, the Honorable J. S. Williams, judge of the circuit court in equity as aforesaid, of his own motion, and without any previous order therefor, and without notice to respondent, set down for immediate hearing the application of Annie Dorothy Gunnels, the complainant, for alimony pendente lite. The complainant and respondent were both present at this hearing, and both of them testified as witnesses. Their testimony was stenographically reported by the court reporter, and a duly certified copy of said testimony has been sent to this court by the attorneys of record for complainant, which the attorneys of record for respondent consented in open court might be done.

At the hearing the judge presiding adjudged and determined that complainant was entitled to alimony pending the further hearing of said cause, and ordered and directed respondent to pay to the register of said court on Monday of each week, beginning July 24, 1933, the sum of $5 in cash.

On August 30, 1933, respondent took certain testimony in support of his cross-bill.

On September 2, 1933, complainant filed her petition, addressed to the presiding judge, in which it was alleged: (1) "That on July 20, 1933, an order had been granted by said judge whereby the respondent was commanded and directed to pay to the complainant the sum of $5.00 per week, payment to be made to the register in chancery, and that the said respondent has failed and refused to pay said sum. (2) That on May 3, 1933, an injunction had been granted, by said judge, restraining and enjoining respondent from disposing of any of his property, as was specified in said injunction, and that the said respondent had disposed of his property consisting of one Ford Coupe Automobile, which was claimed by the complainant as her personal property, and that the said respondent had also disposed of a certain DeSoto Automobile, and of $400.00 in money, and that the disposition of said property was in violation of said injunction. (3) That the respondent had filed a cross-bill in said cause, a copy of which is attached to the petition and made a part thereof. (4) That petitioner shows that the said respondent is in contempt of this court on account of the acts hereinabove mentioned in violation of the order of this court, and in the failure to pay the weekly alimony heretofore ordered by this court, all of which facts appear to the court by the sworn testimony attached to this petition taken before the Honorable B. J. Jennings by J. R. Morphus, and oath of petitioner and certificate of the Register."

The petition prayed for an immediate order declaring the respondent in contempt, and prayed, also, that his cross-bill be dismissed, and for a suppression of the testimony taken by the respondent on his cross-bill, and for an order prohibiting the respondent from pleading further in said cause until he could purge himself of contempt by carrying out the orders and decrees of the court, and by

paying the alimony that had accrued, and by compelling him to pay into court the money received by him from the sale of said automobile, together with "the sum of money taken out of the bank and disposed of by respondent, all of which said acts were in contempt of your honor and his court."

Every allegation in the petition is direct, positive, and unequivocal. None of the allegations is based upon information and belief, although it is apparent that practically every allegation of the petition must have been based upon information brought to the mind of the petitioner. This conclusion is irresistible both from the character of the allegations and on account of the affidavit attached to the petition which is in words and figures as follows: "State of Alabama, Russell County. Before me, Georgia Windham, a Notary Public, in and for said State and County, personally appeared Annie Dorothy Gunnels, known to me, and who, being by me first duly sworn, deposes and says that she has read and is familiar with the allegations contained in the foregoing petition, and where it is stated upon facts are true, and where stated upon information and belief, affiant verily believe the same to be true. Annie Dorothy Gunnels. Complainant. Sworn to and subscribed before me this the ⸺ day of September 1933. Georgia Windham, Notary Public."

As will be noted, the above affidavit specifies two classes of allegations contained in the petition: Allegations charged as facts, and allegations charged upon information and belief.

On September 2, 1933, the presiding judge, in response to the petition, granted an order for the issuance of the rule nisi commanding the respondent to appear before him on September 12, 1933, and show cause why he should not be adjudged guilty of contempt "for failure to comply with the terms of a decree heretofore rendered."

The rule nisi issued as prayed for, and on September 12, 1933, the respondent appeared in open court before said judge, limiting his appearance to the filing and presentation of a motion to vacate and set aside the order for the rule nisi, and also to quash the same; also to quash the rule nisi that issued in said cause, all for want of jurisdiction in the court, or judge, to grant said order because of the insufficiency of the affidavit, attached to the petition, to support said order, and because of the insufficiency of said affidavit to support the citation that issued in said cause. The motion on being heard and considered by the judge was overruled and denied and the respondent excepted.

The respondent next filed his plea to the jurisdiction of the court, alleging that the court, or judge, was without legal authority to grant the order for the rule nisi, and that the rule nisi was improperly issued, all because the affidavit attached to the petition was insufficient in law. The court granted complainant's motion to strike said plea and the respondent excepted.

Respondent next filed his answer in which he admitted the judgment dated July 20, 1933, awarding alimony in the sum of $5 per week, beginning July 24, 1933, to the complainant, and whereby he was directed to pay said sum to the register. Respondent alleged that at the time said order was made, continuously since that time, and at the time of filing of said answer he was wholly without means, money, or property with which to satisfy said decree and comply with its terms; that he had been unable to borrow any money with which to pay the register; that he was without employment; that he had no gainful occupation; and that through no willful and intentional act of his had he divested himself of funds, money, or property to avoid complying with the terms of said decree.

The respondent also denied the violation of the writ of injunction that issued in said cause, and alleged that he had withdrawn from the Phenix-Girard Bank all of the money that he had deposited therein, and that he had paid out the same prior to the time that he had notice of said writ of injunction, or of the order authorizing said writ.

The answer further alleges that the respondent was not in contempt of court; that he had the highest respect for the court and its decrees; and that his failure to pay the alimony awarded was not due to any disrespect for the court or its order but was due solely and alone to his absolute inability to comply with the order of the court. The answer was duly and legally verified by the oath of the respondent.

The first insistence made by the petitioner is that the affidavit annexed to the petition was insufficient in law to invoke the jurisdiction of the court below, and that the judgment of the court below finding the petitioner guilty of contempt was therefore null and void. Petitioner cites the case of Robertson v. State, 20 Ala. App. 514, 104 So. 561, 575, in support of his contention.

Our case of Robertson v. State, supra, contains a full and extended expression of the law governing contempt proceedings, prosecuted for the failure to pay alimony pendente lite. It explains step by step the procedure and proof necessary to the rendition of a valid judgment in a contempt proceeding prosecuted for the failure to pay alimony pendente lite, and numerous cases from this and other states are cited in support of the rule there announced. We are of the opinion that the Robertson Case is decisive of every question presented upon this appeal.

■ In the Robertson Case the well-settled rule that proceedings in contempt must be be-

gun by affidavit was recognized and adhered to. The reason for the rule and the authorities in support thereof were set forth at length. It was there decided that a legally sufficient affidavit was jurisdictional and that an affidavit upon information and belief, without a statement of the facts upon which the information and belief was founded, was insufficient. We come, now, to an application of that decision to the petition and affidavit presented in these cases.

Attention has hereinbefore been directed to the petition filed in the contempt proceeding and to the allegations of said petition charging the various acts of the respondent which are claimed to be contemptuous of the orders and decrees of the court below.

The first act charged in the petition is the failure of the respondent to pay alimony pendente lite as the same was awarded on July 20, 1933, and in support of this allegation a certificate of the register is attached to the petition and is made a part thereof as showing, or tending to show, that the respondent had in fact failed and refused to pay said alimony.

The second act charged in the petition is the disposition of certain property in violation of the injunction which was issued May 3, 1933, and served May 4, 1933. Proof of this allegation is wanting and not to be found in the record.

The third act charged is the filing of a cross-bill by the respondent and the taking of evidence in support thereof. It is perfectly obvious that the allegations of this paragraph, if believed and proven, do not charge a contempt.

The fourth paragraph of the petition avers that the respondent is in contempt on account of the acts charged in paragraphs one, two, and three of the petition and the allegations of the petition are that these facts "appear to the court by the sworn testimony attached to this petition, taken before the Honorable B. G. Jennings by J. R. Morphus, and oath of petitioner and the certificate of the register." The sworn testimony attached to the petition does not prove the facts alleged in the petition. The certificate of the register simply shows that the alimony pendente lite has not been paid to him as the respondent was ordered to do, and which failure and refusal to pay was not contemptuous conduct unless the respondent had means with which to comply with the order to pay.

Every allegation of the petition is direct and positive and the verification of the petition should have been direct and positive. But the affidavit of petitioner attached to the petition is not direct and positive. This affidavit recites in substance that the allegations of the petition where stated as facts are true, and where stated upon information and belief, affiant verily believes the same to be true. This court is not advised from the petition what allegations the petitioner intended to aver as facts, or what allegations thereof she intended to aver upon information and belief. Upon a construction of the affidavit, attached to the petition, most favorable to the complainant, it means that she had knowledge that some of the averments of the petition were true; that, while she did not know, she had been informed and believed that other averments of the petition were true; and that, as to yet other averments, she had neither knowledge nor information, but without knowing the facts or ever having been informed of their truth, she believes them to be true. Whether any particular allegation of the petition is within one or the other of these three classes is wholly uncertain and unascertainable from this verification. An affidavit of belief in the truth of an allegation amounts to nothing. When averments of a petition are positive, the verification of the petition should be positive. When the allegations of a petition are upon information and belief, the verification of the petition should embrace both the fact that the affiant has been informed and believes the allegations to be true, either in terms, or by affirming positively that the facts alleged in the petition are true as therein stated. Robertson v. State, supra; Burgess et al. v. Martin, 111 Ala. 656, 20 So. 506; Globe Iron Roofing & Corrugating Company v. Thacher, 87 Ala. 458, 6 So. 366.

Under the above-cited authorities and the many additional authorities cited and referred to in Robertson's Case, supra, we hold that complainant's verification of her petition in the contempt proceedings instituted in the court below was insufficient, and that the same did not invest the court below with jurisdiction to render a decree, or to pronounce a judgment adjudging the respondent in contempt.

It is next insisted by J. C. Gunnels, appellant and petitioner, that the judgment or decree of the court below imposing punishment on him for contempt is null and void because the facts introduced in evidence before the trial court did not under any circumstances constitute a contempt.

It is to be admitted that the circuit court of Russell county, Ala., in equity, pending the suit of Mrs. Annie Dorothy Gunnels against J. C. Gunnels, her husband, for divorce, had the right, and it was his duty to exercise that right by making "an allowance for the support of the wife out of the estate of the husband, suitable to his estate and the condition in life of the parties." Code 1923, § 7417. Webb v. Webb, 140 Ala. 262, 37 So. 96, 103 Am. St. Rep. 30. In Webb's Case, supra, it was said:

"A common method of enforcing orders or decrees for alimony is by attachment for contempt; and when the husband has the

means or estate out of which alimony may be paid, and he willfully and contemptuously refuses to do so, no good reason exists why he may not be compelled to do so by attachment.

"The attachment is designed to enforce compliance with the order, and not to punish for being unable to perform it."

■ Imprisonment for contempt should never be imposed by a judge where the failure to pay alimony is not from contumacy but from inability to comply with the order.

In Robertson's Case, supra, this court said: "This is a civil contempt proceeding, the object of which is, not to punish the respondent, but to coerce him to pay the money in satisfaction of the alimony decreed by the court. In a contempt proceeding of this character, the object of which is to coerce the payment of money, the lack of ability to pay on the part of the defendant is always a complete defense against enforcing payment from the defendant by imprisonment. Snook v. Snook, 110 Wash. 310, 188 P. 502, 9 A. L. R. 262."

■■ Our statute, above cited, provides for an allowance to the wife out of the estate of the husband. If the husband has no estate out of which the allowance can be made, or if he is without means to comply with the order making the allowance, then he is discharged from the obligation to pay. If the husband is able to work and does not work, then the court making the award is without judicial power to compel him to work. Webb's Case, supra.

■ Counsel for Mrs. Annie Dorothy Gunnels, by agreement with counsel for the petitioner, has filed in this court a duly certified transcript of the testimony taken before the court below upon the submission of her application for alimony pendente lite. While counsel on both sides recognize that this court cannot and should not upon this submission question the regularity of the award of alimony pendente lite to Mrs. Gunnels by the court below, yet, the insistence is made by her counsel that this testimony should now be considered by this court in determining whether or not the trial court was justified in adjudging the petitioner guilty of contempt inasmuch as the argument is that evidence was within the breast of the trial court at the time the judgment of contempt was pronounced and that said evidence was in part the basis of said judgment. This court has examined the testimony in question and it finds therefrom that, while Mr. and Mrs. Gunnels lived together as husband and wife, he made ample provision for her comfort, maintenance, and support out of his own labor, or out of questionable ways and means which that testimony seems to indicate. Mrs. Gunnels testified that her husband ran a social club and a beer joint while they lived together. If Mr. Gunnels was conducting a place where gaming was permitted, or if he was operating a gaming table in this social club,

or if he was the proprietor of a place where prohibited beer was sold, then he was violating the criminal statutes of this state, and surely he was under no obligation or necessity of continuing these unlawful enterprises in order that he might pay alimony to his wife. Mrs. Gunnels further testified that, while she and her husband lived together he was never broke, and that at one time he had as much as $350 in his home, kept in a cedar chest. She testified positively that this money was not there where it had been kept at the time of the separation. Mrs. Gunnels further testified at the time of the separation Mr. Gunnels had in his possession two automobiles, one of which, a Ford coupé, she claimed as her own, and the other a DeSoto sedan, the value of which she did not know, belonged to her husband; that at this time Mr. Gunnels had deposited in bank three or four hundred dollars which she attempted to preserve by injunction for the payment of alimony. She also testified on this hearing that she did not know whether Mr. Gunnels had a dollar or not; that she did not know whether he had made a dollar or not in the last three months; that he was then residing with his sister; that while they lived together Mr. Gunnels frequently brought home as much as $75 which she was told he made gambling; that if he gambled successfully he should be able to pay as much as $5 per week, but that if he lost, then he would not have anything; that the only property Mr. Gunnels then had was a second-hand automobile worth less than $300; and that she did not know anything about his financial condition.

Respondent testified also upon that submission. His testimony shows that he did not have any money, and that the automobile which Mrs. Gunnels had testified belonged to him was worth not to exceed $100 and that he owned no other property. The foregoing substantially states the testimony upon which the award of alimony was made.

The testimony of Mr. Gunnels, on cross-examination, taken August 30, 1933, in support of his cross-bill, shows that, when he and his wife separated, he had on deposit in the Phenix-Girard Bank approximately $400; that he withdrew this money from the bank on or about May 2, 1933, because he wanted to and needed it; that he lost practically all of this money playing poker; that this money was withdrawn from the bank before he was served with the injunction, prohibiting its withdrawal; that he had no other money and no property at the time of the separation except two second-hand automobiles, one a Ford coupé and the other a DeSoto sedan; that the DeSoto sedan had been sold to his brother-in-law, Paul Golden, to pay a debt of $60 for rent of rooms for himself and his wife; and that the difference went for board at $5 per week. That the Ford coupé had been sold to Jimmie Mathews to pay an indebtedness of $200, and for $25 cash above the

amount of said debt. That both automobiles had been pledged for the payment of said respective debts before the divorce proceedings were introduced.

On September 14, 1933, testimony was taken upon the submission of the contempt proceedings in the court below, and the respondent testified in his own behalf at that hearing, in substance, as follows: That he knew that on July 20, 1933, he had been ordered to pay to the register the sum of $5 per week as alimony pendente lite; that he had not paid this money; that he had not had the money with which to comply with the order of the court, and had not been able to get it; that he owed other debts which he was unable to pay; that he had on deposit in the Phenix-Girard Bank some money at the time the divorce proceedings were instituted against him by his wife and that he withdrew this money from the bank and paid it out a short time before he was served with the writ of injunction that issued in this cause; that he did not have any of that money at this time and did not have any of it at the time the award of alimony was made; that he owed some doctors' bills and that he also owed for some furniture which had been used for the mutual comfort and benefit of his wife and himself; that he owed his brother-in-law for the rent of rooms used by himself and wife; that he had pledged his DeSoto automobile for the payment of this rent; that he was unable to pay his debts; that he had no source of income; that he had no job; that he had been unable to secure work pending this proceeding; that he had not made any money since the service of the injunction and since the award of alimony to his wife: that he was financially unable to comply with the decree of the court ordering him to pay alimony and had been financially unable to pay the same since the award was made. This testimony was all the testimony introduced at said hearing concerning the financial condition of the respondent, except his bank account which corroborated his testimony.

We do not find anywhere in the record any evidence to contradict the testimony of the respondent on the question of his inability to comply with the order of the court below.

Referring again to the Robertson Case, supra, this court said, with respect to the testimony of Robertson and its effect upon the contempt proceeding involved in that case:

"He testifies positively that he has not received any sum of money from any source since the service of the writs of garnishments above referred to, and that he has no funds with which to pay as provided in the decree. Under these circumstances, it was incumbent upon the complainant to show beyond a reasonable doubt that the respondent was financially able to comply with the decree. This the complainant failed to do, and our opinion

is that the record affirmatively shows that the respondent was not financially able to comply with the decree at the time it was rendered, or at the time he was adjudged in contempt. It is well settled in this state, in cases of this kind, that:

"'There must be in the case something wrong beyond the mere failure to pay money; and the party, before he can be convicted and punished for it, must have an opportunity to be heard in his own explanation. * * * His inability to pay may be so absolute, as to constitute an effectual excuse.' * * *

"It must be remembered, also, that the imprisonment by a judge for contempt, is always conditional, and is at his discretion, and may, at any time, by the same discretion, be discharged. And very clearly, it ought never to be resorted to, except as a penal process, founded on the unwillingness of the party to obey. The moment it appears there is inability, it would clearly be the duty of the judge, to discharge the party, since it is only the contempt, the disobedience upon which the power rests."

As stated, in the instant case, the petitioner testified positively that he had no funds or property with which to pay alimony as provided in the decree and that he was totally unable to do so. It therefore and thereupon became the duty of the complainant to show beyond a reasonable doubt Gunnels, the respondent, was financially able to comply with the decree. This she failed to do, and it is our opinion that the evidence set out in the record affirmatively shows that he, the respondent, was not financially able to comply with the decree, either at the time it was pronounced, or at the time he was adjudged in contempt.

For these reasons, and under the rule announced, we hold that the order or judgment finding the respondent guilty of contempt is not in accord with the evidence adduced at the hearing and that said order or judgment is void for want of legal authority of the trial judge, under the evidence, to render this particular order or judgment. The petitioner, J. C. Gunnels, is hereby discharged from the custody of B. F. Burch, sheriff of Russell county, Ala., under the judgment of contempt pronounced by the court committing him to the custody of said sheriff for contempt.

It is further ordered and adjudged that the judgment of the lower court denying the writ of habeas corpus to petitioner be and the same is hereby reversed and remanded to the trial court in order that the petitioner may dismiss his petition in that court, or may make such other disposition of said petition as he may be advised is necessary. The petitioner is discharged and the judgment of the court below denying the writ of habeas corpus is reversed, and that cause remanded.

Reversed and remanded.