**In re Eugene ALLISON, Debtor.**

**Bankruptcy No. 94–05244–BGC–13.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

May 16, 1995.

Richard L. McClendon, for debtor.

Cheryl Wilkinson–Simonetti, Asst. Atty. Gen., Birmingham, AL, for movant.

David Rogers, Trustee.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO LIFT STAY

BENJAMIN COHEN, Bankruptcy Judge.

This matter came before the Court for a trial on the Motion for Relief From Stay filed by the State of Alabama, Department of Human Resources, *ex rel.* Ginger Shew. The matter was submitted on the testimony of Ms. Shew and Mr. Allison, the exhibits admitted into evidence, the record in the case and the arguments of counsel.

### I. Findings of Fact

The Debtor and Ms. Ginger Shew were divorced on January 28, 1987. The divorce decree requires the Debtor to pay $250.00 per month to Ms. Shew for the support and maintenance of his two minor children and to pay the children's medical expenses.[1]

The Debtor became delinquent in the payment of his monthly child support obligation and failed to reimburse Ms. Shew for certain medical expenses incurred by her as a result of illnesses of the children. The Debtor also became physically disabled, and according to his testimony, receives total disability payments through the Social Security Administration.[2]

The Debtor's defaults in his support obligations were the subject of numerous petitions for rule nisi filed by Ms. Shew in the state circuit court. On August 6, 1993, the state court ruled that the total child support arrearage owed by the Debtor, including medical expenses reimbursable to Ms. Shew, was, as of that date, $3,611.04. The state court's order required the Debtor to satisfy that arrearage from any lump sum disability award that he might receive from Social Security. At that time, the Debtor was still awaiting word from Social Security on his disability application.

The Debtor was subsequently awarded a lump sum social security disability payment of $7,500.00. According to his testimony in this case, the Debtor spent the money on living and moving expenses; to pay a sizable obligation owed to his brother in law; but did not, as was required by the order of the state court, pay any of the money to Ms. Shew in satisfaction of his child support arrearage. Because of the Debtor's failure to pay the lump sum amount, the state court held, on August 18, 1994, that the Debtor was in contempt of its previous order, and that the Debtor's unfilled obligations had been augmented by $175.07 in interest and $610.00 in medical expenses incurred by Ms. Shew since the 1993 proceeding. The order provided that the Debtor could purge himself of the contempt by paying $4,982.00 to Ms. Shew by September 2, 1994. On September 6, 1994, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.

 Through authority provided in Ala. Code §§ 38–10–1 through 38–10–12, the State of Alabama, Department of Human Resources, ("DHR") filed the present motion on behalf of Ms. Shew seeking relief from the automatic stay in order to continue state court proceedings against the Debtor. DHR contends that by failing to abide by the terms of the divorce decree and by failing to pay the required portion of his lump sum award to Ms. Shew, the Debtor is in "criminal contempt" of both the final judgment of divorce entered on January 28, 1987, and the August 18, 1994, state court order. DHR also contends that 11 U.S.C. § 362(b)(1) ex-

---

1. When the divorce decree was entered neither of the Debtor's children were living with the Debtor. One child has since moved and is living with the Debtor, however, the Debtor has not asked the state court to modify his divorce decree.

2. The Court issued a witness subpoena to the Social Security Administration requiring a representative of that agency to appear at the trial of this matter. No one appeared. The parties agreed that the Debtor would provide whatever releases the agency required to allow the State to obtain his social security records. The State was to provide that information to the Court prior to this Court's ruling, however, the Court now finds that this information is not necessary to decide this matter.

empts an action for criminal contempt from the operation of the automatic stay.[3]

## II. Conclusions of Law

Section 362(b)(1) provides that the automatic stay does not operate to stay "the commencement or continuation of a criminal action or proceeding against the debtor." Contempt may be criminal or civil.

### A. Civil Contempt

■■■ Civil contempt consists in the refusal of a person to do an act that the court has ordered him or her to do for the benefit or advantage of a party to a suit or action pending before the court. *Ex parte Griffith*, 278 Ala. 344, 351–352, 178 So.2d 169, 177–178 (1965), *cert. denied, Griffith v. Board of Com'r of the Alabama Bar*, 382 U.S. 988, 86 S.Ct. 548, 15 L.Ed.2d 475 (1966). The purpose of civil contempt is to compel compliance with a court's order, and to achieve that purpose, the court is empowered to commit the contemnor to imprisonment until he or she complies with the order. *Id.* Civil contempt looks only to the future and assumes a court order "which by its nature is still capable of being performed or complied with." Rule 33.1(d), A.R.Crim.P. There is no maximum statutory limit on the length of time for which a contemnor may be committed for civil contempt. If the contemnor's failure to comply with the court's order is due to inability to perform, rather than contumacy, imprisonment for civil contempt may not be imposed. *Muery v. Muery*, 247 So.2d 123, 127–128, 46 Ala.App. 617, 621–622 (Ala.Civ. App.1971), *cert. denied,* 287 Ala. 737, 247 So.2d 128 (1971). There is no provision of Section 362(b) which excepts the commencement or continuation of an action for civil contempt from the automatic stay.

### B. Criminal Contempt

■■■ Criminal contempt consists of "[w]illful disobedience or resistance of any person to a court's lawful writ, subpoena, process, order, rule, decree, or command, where the dominant purpose of the contempt is to punish the contemnor." Rule 33.1(c)(2), A.R.Crim.P. Its purpose is to impose punishment for disobedience of an order of the court. *Ex parte Griffith*, 278 Ala. at 351–352, 178 So.2d at 177–178. Unlike civil contempt, criminal contempt presupposes accomplished conduct, rather than contemplated or ongoing conduct. "It is a criminal offense for which a specific punishment is meted out, over which the defendant has no control." Committee Comments to Rule 33.1, A.R.Crim.P. The penalty which may be imposed for criminal contempt is limited by Ala.Code § 12–11–30(5) which provides that: "A circuit court may punish contempts by fines not exceeding $100.00 and by imprisonment not exceeding five days." By virtue of 11 U.S.C. § 362(b)(1), the commencement or continuation of an action for criminal contempt is not stayed by the filing of a petition in bankruptcy. *In re Kearns*, 168 B.R. 423, 426 (D.Kan.1994); *In re Roussin*, 97 B.R. 130, 132 (D.N.H.1989); *In re Anoai*, 61 B.R. 918, 921 (Bankr.D.Conn.1986); *Dept. of Human Resources v. Chambers*, 211 Ga.App. 763, 441 S.E.2d 77, 80 (1994).

### C. State Court Proceedings

■■■ Under Alabama case law, the Debtor's failure to pay the required portion of the lump sum disability payment to Ms. Shew may have constituted criminal contempt because the Debtor's actions may have been a contemporaneous violation of the state court's August 18, 1994 order.[4] This, of

---

**3.** DHR contended orally at the hearing that the Debtor's Chapter 13 petition should be dismissed as having been filed in bad faith. The Court cannot consider those contentions at his time because no motion to dismiss has been filed by DHR.

**4.** A singular instance of failure to perform a financial obligation under a divorce decree can support both a finding of civil contempt and a finding of criminal contempt. If the contemnor has the present ability to pay a past due obligation, and had the ability to pay the obligation

when it became due, he may be held in criminal contempt for the failure to pay the obligation when it became due, and may be committed for civil contempt in order to coerce the immediate payment of the obligation. In *Hardy v. Hardy*, 240 So.2d 598, 46 Ala.App. 249 (Ala.Civ.App. 1970) the wife had been awarded a divorce decree providing for payment of $500.00 per month for the support and maintenance of herself and her minor children, payable on the 2nd day of each month. The husband failed to make the $500.00 payment due on April 2, 1970, and the wife filed a petition on April 8, 1970 asking that

course differs from a simple failure to pay his child support. A state court may find that even if the Debtor does not have the ability to comply with the state court's order now, that the Debtor had the ability to comply with the order at the time he received the money, and as a result of his failure to pay, that he disobeyed the court's order and may be punished for it now, within the limitations supplied by Ala.Code § 12–11–30(5).[5]

a Rule Nisi be issued to the husband requiring him to show cause, if any he had, why he should not be held in contempt of court for failure to make the support payment of $500.00 on April 2, 1970. Two days prior to the hearing, the husband made the April 2 payment. The trial court, however, found the husband in contempt for failure to make the payment on April 2, 1970 as he had been ordered to do, and sentenced him to serve 5 days in the county jail. The husband's explanation for failure to make the required support payment by April 2, 1970, was that he was out of town on business when the payment became due. The husband contended that he had purged himself of contempt prior to the hearing by paying $500 to the wife. The state court of appeals affirmed the trial court, stating:

> In her petition asking for the Rule Nisi, Willa Hardy did not ask the court to compel petitioner to comply with an order of the trial court which had been made for her benefit. Had she done so, the proceeding that followed would have been in the nature of a civil contempt.
>
> But, in the case at bar, Willa Hardy asked that petitioner be punished for willfully and contemptuously refusing to obey the decree of the court awarding support payments each month, pendente lite.
>
> Then the trial court, in its contempt decree, stated that petitioner had willfully violated its order awarding support, pendente lite, and that he was in contempt of said court, and as punishment for said contempt, sentenced him to serve five days in the Houston County jail.
>
> There was no request by Willa Hardy, in her petition for the Rule Nisi, nor was there any effort by the trial court in its decree to coerce the petitioner, Charles Hardy, into making the support payments for the benefit of Willa Hardy; on the contrary, the expressed purpose of both Willa Hardy's petition and the trial court's decree was to punish Charles Hardy for willfully failing to comply with the trial court's decree awarding monthly support payments, pendente lite.
>
> This conduct on the part of petitioner constitutes criminal contempt, and the punishment therefor was within the jurisdictional authority of said court.
>
> This not being a civil contempt proceeding, petitioner could not purge himself of the contempt by paying the April 2 support payment prior to the hearing on the Rule Nisi, but could only purge himself of the criminal contempt citation by serving the prescribed number of days in the Houston County jail.

240 So.2d at 601, 46 Ala.App. at 252.

5. Even if the contemnor does not have the present ability to pay the obligation, he may still be held in criminal contempt for the failure to pay the obligation when it became due, but may not be committed for civil contempt. The case of *Muery v. Muery*, 247 So.2d 123, 46 Ala.App. 617 (Ala.Civ.App.1971), *cert. denied*, 287 Ala. 737, 247 So.2d 128 (1971), in which the court considered a situation similar to that involved in this case, illustrates the point. In *Muery*, after a petition for divorce was filed, the trial court issued an ex parte order enjoining the husband "from making use of, or disposing of, concealing, converting, or in any other manner using, any property acquired by appellant during his marriage to complainant, other than in the customary manner of supporting and maintaining himself." 247 So.2d at 125, 46 Ala.App. at 619. Just prior to the injunction being issued, the husband withdrew $42,000 from his bank account. After the injunction was issued, the husband placed a portion of the money in an account for his children, spent another portion on legal fees and purported necessaries, and took the remaining $25,000 to Las Vegas, where he either gambled away or had stolen from him, all but $300. The state trial court ordered the husband confined to jail for a minimum of three days, with the further provision that he could purge himself of the contempt at any time after the expiration of the three days by placing $25,000 in a local bank, even though the husband testified that his financial worth consisted solely of his present net salary of $220 per week and that he could not pay the required $25,000. The Alabama Court of Appeals held that the trial court's order was improper, to the extent it required the husband to serve more than five days in jail. The court stated:

> The appellant in the present case had already been in prison for longer than the maximum five day sentence allowed by the statute for criminal contempt. Therefore, it is evident that the only purpose of the court's order holding the appellant in contempt until he produced the $25,000 was for the advantage of the party injured by his refusal to so produce, i.e., appellant's wife and children.
>
> The court's order was coercive, and provided in effect, that appellant could purge himself at anytime after serving the minimum three days, by complying with the court's order to produce the money.
>
> The law in Alabama is settled on the proposition that imprisonment for contempt should never be imposed by a judge where the failure to pay alimony, etc. is not from contumacy, but from inability to comply with the order.

Criminal contempt, as a rule, cannot be purged by the payment of a money obligation to the opposing party, but may only be satisfied by the contemnor serving the sentence imposed. *Hardy v. Hardy*, 240 So.2d 598, 601, 46 Ala.App. 249, 252 (Ala.Civ. App.1970). The Debtor's testimony in this proceeding is that he spent the lump sum money received from Social Security, and is unable to comply with the state court order; a fact that would ordinarily preclude him from being subject to punishment for civil contempt, but not from prosecution for criminal contempt.

### D. Bankruptcy Court Proceedings

This Court should not speculate as to the state court's intentions, but should instead allow the state court to interpret its own order. If, upon continuation of the state court proceeding, the state court determines that the Debtor's pre-petition actions, consisting of his failure to pay the required portion of the lump sum disability payment to Ms. Shew at the time he received the payment, constituted civil contempt, the state court is of course precluded by the automatic stay from imposing on the Debtor a sentence that would require him to remain in confinement until his contempt is purged by the performance of an obligation to Ms. Shew. The Debtor is performing his obligation in a manner allowed by the Bankruptcy Code. He has proposed to pay the pre-petition debt through his bankruptcy plan.[6] However, if,

> In the case at bar the only material facts relating to appellant's past and present financial condition and appellant's use of the $25,000 came from the appellant himself. He in essence testified that he took the money in violation of the court order and either lost it gambling or had it stolen from him, and there was no evidence in the record suggesting otherwise. He further testified that his financial worth consists solely of his present net salary of $220 per week.
> ....
> The case at bar is properly before us for review, and based on the evidence set out in the record established in the trial court, we can come to no other conclusion than that appellant was unable to purge himself of his contempt. Had the evidence been otherwise, it should go without saying that our conclusion would have been different from what it now is.
> The appellant, being unable to purge himself of the civil contempt citation, and having

upon continuation of the state court proceeding, the state court determines that the Debtor's same pre-petition actions constituted criminal contempt, the state court is not precluded by the automatic stay from imposing on the Debtor a sentence which would require him to be incarcerated for a period not to exceed five (5) days and/or the payment of a fine not to exceed $100.00. The state court may punish the Debtor for failure to comply with its order, subject to the statutory limitations specified in Ala.Code § 12–11–30(5).

### III. Conclusion and Order

Based on the above, it is **ORDERED** that:

1. To the extent that the Department of Human Resources's request for relief from the automatic stay concerns the prosecution of the Debtor for criminal contempt, the Bankruptcy Code allows the Department to proceed against the Debtor in state court without the permission of this Court; however, to the extent required by the Bankruptcy Code, the Department's Motion for Relief from Stay is **GRANTED** as to the continuation of its criminal prosecution against the Debtor; and,

2. To the extent that the Department of Human Resources's request for relief from the automatic stay concerns the prosecution of the Debtor for civil contempt because of the Debtor's failure to pay support obli-

> served the maximum period of imprisonment authorized for a criminal contempt citation, is due to be discharged from custody.
> 247 So.2d at 127–128, 46 Ala.App. at 621–622.

**6.** The simple fact that the Debtor is delinquent on the payment of his pre-petition periodic support payments is an insufficient reason for granting relief from the stay in a Chapter 13 bankruptcy case. *Carver v. Carver*, 954 F.2d 1573, 1577 (11th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992). If the Debtor still had the money paid to him in a lump sum by Social Security, the issue would not be so clear. However, the decision in this case is premised on the testimony of the Debtor that he no longer has the money and the lack of any testimony to the contrary. The issue as to what extent DHR would be entitled to relief from the stay if the Debtor still had the money is not before the Court and has not been addressed in this opinion.

gations which arose prior to the filing of the petition in this case, or as it concerns any other efforts to collect those delinquent support obligations which arose prior to the filing of the petition in this case, the Motion for Relief from Stay is **DENIED.**

Done and ordered.