178 So.2d 169

**Ex parte John Ike GRIFFITH,
Attorney at Law.**

**6 Div. 194.**

Supreme Court of Alabama.

Aug. 12, 1965.

Rehearing Denied Sept. 9, 1965.

**346**

Matt H. Murphy, Jr., Birmingham, for petitioner.

Lawrence K. Andrews, General Counsel for Alabama State Bar.

HARWOOD, Justice.

On 10 July 1964, the Grievance Committee of the Alabama Bar Association filed charges against John Ike Griffith, a member of the Bar of this state. These charges allege unprofessional conduct against Griffith because of his activity and participation in obtaining a number of so-called "quickie" divorces in several courts of this state. A list of such cases was filed as an exhibit to the charges.

On 15 January 1965, the original charges and exhibits were amended to include some 41 such divorce cases in Winston County Circuit Court (Haleyville Division) and 269 such divorce cases in Marion County Circuit Court.

Upon filing of a complaint (in this instance by the Grievance Committee of the Alabama State Bar) Rule B(12) of the Rules Governing the Conduct of Attorneys in Alabama, provides that the President shall make and cause to be filed with the Secretary an order fixing a date for the taking of evidence upon the complaint. It is further provided that the evidence may be taken by a Commissioner designated by the President.

On 25 January 1965, Frank J. Tipler, Jr., as President of the Board of Commissioners of the Alabama State Bar, appointed Timothy M. Conway as Commissioner to take testimony upon the charges and specifications, the appointment providing that said Commissioner should take the testimony of John Ike Griffith at the courthouse in Birmingham on 9 February 1965, at 10:00 A.M.

Notice of such hearing was served upon Griffith, and included in the notice was a subpoena duces tecum to Griffith to bring with him and produce:

"(1) All records in his possession pertaining to divorces obtained by him as forwarding attorney, or as solicitor, in the Law and Equity Court of Winston County, Double Springs, Alabama, (2) All files, records and correspondence in said cases; (3) All agreements in writing between complainants and respondents in said cases; (4) All checks and receipts representing payments of costs and/or attorney fees in said cases; (5) All records of fees received or forwarded in said cases; (6) All records of every nature or description pertaining to the divorce cases set forth on Exhibit A, as amended, and Exhibit C of the Complaint in the above styled matter; and (7) the office copy of a letter under date of July 3, 1963, to Mr. James A. Meceli, 370 Parsippany Boulevard, Boonton, New Jersey."

The notice and subpoena duces tecum was signed by John B. Scott, Secretary of the Alabama State Bar. (See Rules Governing the Conduct of Attorneys in Alabama, Sec. B(19); Title 46, Sec. 35, Code of Alabama 1940.)

On 5 February 1965, Hon. Matt H. Murphy, Jr., as attorney for John Ike Griffith, filed with the Secretary of the Alabama State Bar a motion to quash service of the motion to take the deposition and a motion to quash the service of the subpoena duces tecum.

On the day set for the hearing Mr. Murphy appeared before Mr. Conway, the Commissioner, and again offered the motions to quash as above mentioned. Mr. Griffith was not present on advice of Mr. Murphy. Upon the motions being overruled, Mr. Murphy declined to permit his client to appear before the Commissioner.

Thereupon Mr. Conway, the Commissioner, petitioned the Hon. J. Edgar Bowron, Presiding Judge of the Tenth Judicial Circuit, for an order of attachment for the said Griffith, commanding him to appear instanter before the Commissioner and give testimony. Judge Bowron issued the attachment as prayed.

Service of the attachment was accepted, and the hearing before the Commissioner was resumed. Mr. Griffith was sworn, but again refused to take the stand as a witness. Several grounds were asserted as a basis of Mr. Griffith's action, among which it was asserted that should he testify there could possibly arise a breach of the attorney-client privilege on Mr. Griffith's part.

The matter was then again presented to Judge Bowron. Again a hearing and argument was had before Judge Bowron. Mr. Griffith was ordered by Judge Bowron to take the stand and again he refused, the record in this respect showing:

"* * * I respectfully decline to take the stand, and for the reason cite Title 46, Section 43, paragraph 4, wherein the Code of Alabama binds my hands to maintain inviolate the secrets of my clients, and that the charges that have been preferred against me by the Board are obvious and clear that the testimony desired to be adduced from the witness, or from myself, would violate the confidences and secrets of my clients, and for that reason I decline to take the stand and testify, and for the further reason that Title 46, Section 50, paragraph three, wherein it states that should I violate the secrets and the confidences of my client that I may be disbarred for doing so, and for the further reason that I have studied the charges against me, and I have consulted legal counsel and I have been advised by legal counsel that I am not required to take the stand and advised not to take the stand, and that I respectfully obey the counsel of my own lawyer in that respect, and I further cite as grounds

for my refusal to take the stand the contents or the substance of Title 46, Section 35, and Title 46, Section 50, and, Your Honor, I beg to be excused from taking the stand.

"THE COURT: Before you sit down, Mr. Griffith, you fully understand that you, as an attorney, are an officer of the Court?

"MR. GRIFFITH: Yes; Your Honor.

"THE COURT: And, regardless of that relationship, having been ordered and requested by the Court to take the stand, you refuse on the basis of the statement which you have just made?

"MR. GRIFFITH: That is right; Your Honor.

"THE COURT: You may be seated sir. All right. The Court will now hold the witness, Mr. John Ike Griffith, in contempt of Court, and will order him into confinement until such time as he will conform to the order and direction of the Court to take the stand as a witness. I am entirely agreeable to suspending the confinement of this witness to offer counsel an opportunity to review the ruling of this Court, provided that it is done with reasonable expedition and promptness."

The court thereupon entered a formal order adjudging Mr. Griffith in continuing contempt for failure to take the stand and ordered his confinement until such time as he is willing to conform to the order of the court. Sentence was suspended, and Mr. Griffith was released on his own recognizance until the order could be reviewed by this court.

At the threshold of our review, we are met with petitioner-appellant's argument that the proceedings before Commissioner Conway are null and void in that neither Mr. Conway, nor the members of the Board of Commissioners of the Alabama State Bar, nor the members of the Grievance Committee had taken the oath of office required by the provisions of Article 16, Section 279 of the Constitution of Alabama of 1901.

Section 279, supra, provides in pertinent part:

"All members of the legislature, and all officers, executive and judicial, before they enter upon the execution of the duties of their respective offices, shall take the following oath or affirmation:

" 'I, .........., solemnly swear (or affirm, as the case may be) that I will support the Constitution of the United States, and the Constitution of the State of Alabama, so long as I continue a citizen thereof; and that I will faithfully and honestly discharge the duties of the office upon which I am about to enter, to the best of my ability. So help me God.' "

The above provision applies only to state officers. State ex rel. Wilkinson et al. v. Lane, 181 Ala. 646, 62 So. 31. Members of the bar of Alabama are members of a private incorporated association. There is no statutory provision requiring any separate oath on their part before entering upon their duties as members of the bar of this state. They are not state officers. Every attorney practicing before the courts of this state is an officer of the court.

Further, by the provisions of Section 39, Title 46, Code of Alabama 1940, every attorney at law, before being permitted to practice, shall take the following oath:

"I do solemnly swear (or affirm) that I will demean myself as an attorney, according to the best of my learning and ability, and with all good fidelity, as well to the court as to the client; that I will use no falsehood or delay any person's cause for lucre or malice, and that I will support the constitution of the State of Alabama and of the United States, so long as I continue a citizen thereof, so help me God."

■ This oath is in all material aspects the same as the oath required of state officers by Section 279 of our Constitution. This in itself would negative appellant's contention, even if, for the sake of argument, attorneys should be regarded as state officers, a status that cannot be logically accepted.

There is therefore no merit in this contention.

Counsel for appellant also argues that he had filed his motions to quash the complaint with Mr. Scott, Secretary of the Alabama State Bar, and this action placed the matter in the hands of Commissioners of the Alabama State Bar, and that a ruling by a quorum of the Commissioners was necessary for a proper ruling on the motions.

■ This argument overlooks that part of Section 33, Title 46, Code of Alabama 1940, providing that the Board of Commissioners of the Alabama State Bar may designate any person to take testimony under oath in any investigation of charges against an attorney, and further overlooks the provisions of Rule B(12) that evidence may be taken by a Commissioner designated by the President of the Commissioners of the State Bar.

■ These provisions do not contemplate that a quorum of the Commissioners of the State Bar shall be convened every time a ruling is invoked before the Commissioner designated by the President to hear the evidence in a disciplinary action against a member of the State Bar.

At the taking of testimony before a Commissioner appointed for that purpose, it is not necessary that any objection be made to any testimony, but the Board of Commissioners shall consider only such evidence as is in its opinion relevant, material, or competent. Rule B(18). Further, at any meeting of the Board of Commissioners to consider the evidence theretofore taken, the Board shall hear all parties in interest and their counsel. This of course gives the accused attorney full opportunity to present arguments and question the validity of any ruling by the Commissioner to a quorum of the Commissioners of the State Bar.

The above provisions demonstrate that the argument of the petitioner in the aspect above mentioned is untenable.

Petitioner argues that he was a defendant in the proceedings instituted by the State Bar and that Commissioner Conway had no power or legal warrant to have him subpoenaed as a "witness." Counsel relies upon the statement to be found in Lewis v. Gerald et al., 236 Ala. 91, 181 So. 306, to the effect that:

"An attorney, whose conduct is under investigation by the Grievance Committee is not compelled to appear before such committee, but when he does so his appearance must be deemed and treated as voluntary."

■ The investigation by a grievance committee is analogous to an investigation by a grand jury. It is but a preliminary inquisition. Lewis v. Gerald, supra.

But we are not here concerned with the petitioner's appearance before a grievance committee, but with his appearance before a Commissioner duly appointed by the President of the Board of Commissioners of the State Bar to take evidence on charges theretofore preferred by a grievance committee.

Section 35, Title 46, Code of Alabama 1940, provides:

"In the investigation of charges of professional misconduct, the board, and any committee appointed by it for this purpose shall have power to summon and examine witnesses under oath and compel their attendance and the production of books, papers, documents, and other writings necessary or material to the inquiry."

Also, Rule B(19) of the Rules provides that:

"Witnesses may be summoned by the Board, its President, its Secretary, and

Grievance Committee, * * * or by the Commissioner, their appearance and testimony required, the oath administered, depositions taken, and the production of books, papers and other documents required in all respects as provided by law."

Clear authority therefore existed to subpoena the petitioner before Commissioner Conway, unless, as petitioner contends, he could not be compelled to appear as a "witness," he claiming to be a defendant.

■ Hearings before the Board of Commissioners of the Alabama State Bar, or a commissioner duly appointed to conduct such hearing, is, strictly speaking, neither a civil nor a criminal one. Its sole purpose is to purge the bar of a member, whose conduct has, since his admission, rendered him unfit to remain a member of the bar. Ex parte Thompson, 228 Ala. 113, 152 So. 229, 107 A.L.R. 671; Ex parte Messer, 228 Ala. 16, 152 So. 244.

As stated in Messer, supra:

"It is well settled that the rules and principles of the law of evidence applicable to civil proceedings are also applicable to quasi criminal proceedings; that the defendant may be compelled to testify as a witness for the plaintiff, the testimony may be taken by deposition, and the failure of the defendant to testify may be commented on in argument. Smith v. State, 13 Ala.App. 411, 69 So. 406; Miller v. State, 110 Ala. 69, 20 So. 392; Attorney General v. Pelletier, 240 Mass. 264, 134 N.E. 407."

■ The petitioner could therefore be lawfully subpoenaed and compelled to testify before Commissioner Conway.

Counsel for petitioner argues that in the proceedings before Judge Bowron the petitioner was on "both horns of a dilemma" in that should he take the stand and testify he would possibly be confronted with violating Section 43(4), Title 46, Code of Ala-

bama 1940, imposing on him the duty of maintaining inviolate and at every peril, the secrets of his client, and on the other hand, upon his refusal to testify he would be subject to disbarment for violating Section 50 of Title 46, Code of Alabama 1940, for a wilful disobedience or violation of an order of a court requiring him to do or forbear an act connected with, or in the course of, his profession.

■ Whether a communication by a client to his attorney is privileged is a question of fact to be determined by the court. A witness, be he attorney or client, is not entitled to decide the question for himself. Thornton on Attorneys at Law, Vol. 1, Section 96, and authorities therein cited.

■ There are limitations on the application of the rule of privileged communications. As pointed out in Sawyer v. Stanley, 241 Ala. 39, 1 So.2d 21, the perpetration of a fraud is outside the scope of professional duty of an attorney, and that the great majority of cases hold that the privilege "protecting communications between attorney and client is lost if the relation is abused, as where the client seeks advice that will serve him in the commission of a fraud." The reason for this exception to the general rule is that if a client discloses his fraudulent purpose, and the attorney refuses to be connected with it, there cannot be said to be professional employment, and consequently no privilege accrues; if the client does not disclose his fraudulent purpose, there is no confidential relationship established, and no attaching privilege; if an attorney knowing the facts and fraudulent purpose agrees to aid in the perpetration of the fraud, he then becomes a party to it, and the communications made to him cease to be privileged. Thornton, supra, Sec. 122; 58 Am.Jur., Witnesses, Sec. 517.

■ Where false allegations are made in pleadings in order to invoke the jurisdiction of a court, and false testimony is presented to support the untrue allega-

tions, monumental fraud is thereby perpetrated upon the court. The relation of attorney and client cannot be used as a cloak to cover wrongdoing. The rule of privilege is defensive, not offensive. If the communication between attorney and client relates to unlawful or fraudulent accomplishment, higher public policy, and the duty of an attorney to society as a whole abrogates the privilege.

▇▇▇▇ Further, communications made by a client to an attorney which the attorney in the discharge of his duty is of necessity obliged to make public are not privileged. See White v. State, 86 Ala. 69, 5 So. 674. This rule is applicable to facts communicated by a client which are to be alleged in pleading. Thornton, supra, Sec. 118; 58 Am.Jur. Witnesses, Sec. 491.

▇▇▇▇ In addition to the above doctrines it was specifically held in White v. State, supra, that an attorney may, without violating the rule of confidential communications, be compelled to testify to the fact of his employment; that he was the authorized attorney of a client in a certain transaction; as to any matter manifestly not intended to be private or confidential, but was intended to be communicated to the adverse party; to prove the handwriting of his client, the payment of monies to him; the execution of papers which the attorney attested.

▇▇▇▇ It is therefore manifest that the petitioner in refusing to take the stand and testify assumed for himself the right to determine whether his assertion of the doctrine of confidential communications was valid. This was a matter solely within the province of the court to determine. The petitioner's actions in the premises were premature, and can furnish no justification for his refusal to testify.

Finally, petitioner argues that he is guilty only of a criminal contempt, and that the court's action in committing him to jail until he took the stand as a witness was excessive in view of Section 126, Title 13, Code of Alabama 1940, which limits the punishment for criminal contempt to a fine not exceeding fifty dollars and imprisonment not exceeding five days.

The petitioner cites Ex parte Bullen, 236 Ala. 56, 181 So. 498 in support of his argument under this proposition. In Bullen the contemnor had been sentenced to one hour in jail for contempt because of his refusal to answer a question as to whom he had voted for in a municipal election after being ordered to do so by the court.

The court apparently proceeded only under the theory of criminal contempt, as was its province. This is not to say that the court could not have proceeded against Bullen's conduct as a civil contempt and have compelled obedience to its orders. However, this question was not involved in the Bullen appeal, but solely the question of his criminal contempt.

In United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, two fines were levied in the contempt proceedings for the same act. The fine levied for past contumacy was held to be for criminal contempt, and the fine to coerce the union into future compliance with the court's order was held to be for civil contempt. As stated by the court: "The same acts may justify a court in resorting to coercive and to punitive measures."

In the present case the lower court saw fit to proceed against the petitioner-contemnor in a civil contempt aspect only.

▇▇▇▇ Our cases make clear the distinction between a criminal contempt and a civil contempt. Our cases hold that statutory limitations on punishment for contempt (Sections 9, 126, and 143 of Title 13, Code of 1940) apply only to criminal contempt, and not to civil contempt. Ex parte King, 263 Ala. 487, 83 So.2d 241; Ex parte Dickens, 162 Ala. 272, 50 So. 218.

▇▇▇▇ In Ex parte Dickens, 162 Ala. 272, 50 So. 220, it is stated:

**352**

"A 'civil contempt' consists in failing to do something, ordered to be done by a court in a civil action, for the benefit of the opposing party therein."

 In Ex parte Hill, 229 Ala. 501, 158 So. 531, this court wrote:

"It is also said that the limitations provided by statute were not intended to restrict the power of the court to enforce its orders and decrees. That right is called a proceeding to declare a civil contempt. A criminal contempt is one in which the purpose of the proceeding is to impose punishment for disobedience to the orders of the court. A civil contempt invokes the power of the court to commit one who is continuing to violate its orders until he complies with them. This court has held that the statutory limitations do not apply to civil contempts as thus defined. Ex parte Dickens, supra; Ex parte Stickney, 40 Ala. 160."

As stated in 17 Am.Jur.2d Contempt, Section 4:

"A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court; private parties have little, if any, interest in the proceedings for punishment. Conversely, if the contempt consists in the refusal of a person to do an act that the court has ordered him to do for the benefit or advantage of a party to a suit or action pending before the court, and the contemnor is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court; the party in whose favor that judgment was rendered is the real party in interest in the proceedings. Civil contempt proceedings look only to the future. And it is said that in civil contempt proceedings, the contemnor must be in a position to purge himself."

 In the present case the primary purpose of the court's order holding the petitioner in contempt until he took the stand and testified was for the advantage of the party injured by his refusal, i. e., the Commissioners of the Alabama State Bar. The court's order was coercive, and provided in effect that petitioner could purge himself by complying with the court's order to testify. Clearly the contempt was a direct and continuing contempt and the court was fully and legally warranted in treating petitioner's action as a civil contempt and ordering him confined until he complied with the order of the court.

Affirmed.

LAWSON and GOODWYN, JJ., concur.

COLEMAN, J., concurs in result.