Bryce Graham appeals from the June 10, 1982, order of the circuit court finding him in contempt of court. Ala. Code §12-1-8 (1) (1975). Graham was fined $100 and barred from practicing law before the issuing *Page 1000 
judge, Judge N. Pride Tompkins, for 180 days. He appealed to the Supreme Court, which, on November 23, 1982, transferred the cause to this court.
This appeal arose from appellant's representation of Paul Warren, who had been indicted by the March, 1982, term of the Colbert County Grand Jury for second degree theft. The following is a chronology of events related to Warren's case which shed light on the instant appeal:
November 4, 1981: A District Court complaint was prepared charging Warren with third degree burglary. An arrest warrant was also issued.
November 5, 1981: After Warren's arrest, he secured a bail bond pending his indictment.
December 23, 1981: Warren was appointed counsel, Alan Gargis, by District Court Judge George Carpenter. Warren also waived action on his case until the next term of the grand jury.
March 3, 1982: Warren was indicted for second degree theft.
March 15, 1982: Warren was arraigned and pled not guilty. He was represented by Alan Gargis.
March 22, 1982: With the advice and consent of Gargis, Warren pled guilty to the theft charge and was sentenced to six years' imprisonment.
March 25, 1982: The trial judge, N. Pride Tompkins, ordered a probation hearing, to be held on April 21, 1982.
April 5-19, 1982: Sometime during this period of time, Warren visited appellant at his office. After a discussion of his case, Warren retained appellant for the purpose of filing a motion for a new trial, and to appeal.
April 21, 1982: On the date set for Warren's probation hearing, appellant, as counsel for Warren, filed a motion for a new trial in his case. Gargis was still the attorney of record at this time. The probation hearing was postponed.
April 30, 1982: The trial judge set May 3, 1982, as the date for the hearing on the motion for a new trial. Warren's court-appointed counsel, Alan Gargis, was also notified of the hearing.
May 3, 1982: The hearing on Warren's motion for new trial was held. Appellant represented Warren at the motion. Mr. Gargis was dismissed as Warren's counsel. The motion was granted and the trial judge set June 14, 1982, as the date for his new trial.
May 10, 1982: Apparently, Warren's April 21, 1982, probation hearing was rescheduled to this date. The record also supports the conclusion that appellant was not to represent him at such. Upon the granting of Warren's motion for a new trial, the hearing became unnecessary.
May 13, 1982: Appellant filed a motion to quash the indictment charging Warren with second degree theft.
June 9, 1982: A hearing on the motion to quash was held. Without considering the merits of the motion, appellant was held in criminal contempt of court. He was dismissed as Warren's counsel, with the trial court to appoint new counsel.
At the May 3, 1982, hearing on Warren's motion for a new trial, appellant was confused as to whether a hearing on the merits was, in fact, scheduled. Warren was not present during the first portion of the hearing as appellant misunderstood the instructions given to him on April 30, 1982, by the trial judge and, thus, had not instructed him to appear. After an extensive colloquy concerning the misunderstanding, the trial judge postponed the hearing until the afternoon, in order that Warren could be present.
Later, in the morning meeting, the issue of the scope of appellant's representation of Warren was raised by the trial judge. We quote from the record:
"BY THE COURT: Do you represent him?
 "MR. GRAHAM: I represent him on the appeal and on the motion for a new trial.
 "BY THE COURT: All right, if the motion for a new trial is granted, what do you plan to do?
 "MR. GRAHAM: I plan to withdraw unless he employs me to go further with it. *Page 1001 
If the motion is sustained —" (R. 7) (Emphasis added).
That afternoon, after the motion for a new trial had been granted, the trial judge inquired of Warren as to who represented him. We quote from the record:
 "BY THE COURT: Okay, the Court does order that his plea of guilty is withdrawn and the Court is going to set it for a trial date the next term of court, June 14th at 8:30 that morning. Mr. Warren, let me further ask you — who represents you?
"MR. WARREN: When?
"BY THE COURT: Sir?
"MR. WARREN: When?
 "BY THE COURT: Who is going to represent you on trial?
"MR. WARREN: Mr. Bryce Graham.
"BY THE COURT: Mr. Graham — have you hired him?
"MR. WARREN: Well, I'm going to.
"BY THE COURT: Sir?
"MR. WARREN: Yes, I'm going to.
 "BY THE COURT: Have you paid him or retained him to represent you?
 "MR. WARREN: Well, I had paid him to — on appeal to get this laid aside.
"BY THE COURT: Okay —
 "MR. GRAHAM: I would like to have something to say about that, may it please the Court.
"BY THE COURT: Yes, sir.
 "MR. GRAHAM: In answer to, as far as my name being involved in it, sir, and my position involved in it — I was employed at the request of this defendant, whom I didn't know and had never seen until he came to see me, probably a couple of weeks before this motion was filed on my part. He asked me, after a lengthy discussion, to represent him for the purpose of appeal or to set this judgment aside that had been entered against him. And after discussing it with him, I agreed to represent him on the appeal. And at this point, before the Court had just ruled, that was my only position in the case; I did not represent him for a probation hearing that is set for the 10th of this month or anything else having to do with the trial, except the appeal. And of course, the motion for the new trial is the first step in the appeal, but since the Court has granted it — in substance you have granted the motion for a new trial, then I assume the appeal is over and it will go back on the jury docket. I have stated, and I will state, that I do not represent him at this point; he has not employed me. I heard what he said; if he wants to employ me, I will be glad to talk to him, be glad to try to work out arrangements. I have no way of knowing what his financial situation is. If he wants to employ me, I will talk to him and if we can work out arrangements on the fee and if there is no other reason why I don't feel like I could represent him, I will represent him on the basis that it is passed until the next term of court, because I do need some time to prepare for trial if I am to represent him on trial." (R. 8-10) (Emphasis added).
Gargis inquired of appellant as to why he accepted Warren's case and filed the motion without first notifying him. Appellant responded:
 "MR. GRAHAM: I will answer the first part — I didn't take his client away from him. I had never known the man; I didn't know anything about the case until this man walked in my office. He asked me if I would handle this case for him, not on trial, but on the appeal; the trial was over. He asked me to handle his appeal for him. Now that's not unusual for a lawyer to be employed to handle an appeal. I've done it, I guess, fifty times in my thirty some odd years of practicing law. To represent somebody in the trial and not represent them on appeal or to represent them in the trial and represent them on appeal, it just varies. This man came to me and asked me to represent him on the appeal in the case and set aside that six year sentence, because he said he didn't like what had been done up here in this court; he didn't like the way his lawyer had handled the case. And he said he was threatened by a 20 year sentence to get him to agree to it, and he asked me to represent him on the appeal, *Page 1002 
and I told him I would represent him on the appeal and that's the answer to the question." (R. 10-11) (Emphasis added).
Gargis requested the trial judge to explain his relationship with Warren's case if Warren decided not to retain appellant as trial counsel. The trial judge responded:
 "BY THE COURT: No, sir. I haven't dismissed you yet. I am going to set the case for the next term of court regardless. Mr. Warren, you have the right to hire or retain any attorney that you so desire. Mr. Gargis here was appointed by the Court to represent you. Now if you want to hire a lawyer, that's fine; that's up to you. Mr. Graham, what you did, you filed a motion for a new trial and the Court is going to grant the motion and allow Mr. Warren to have a trial. And when you filed a motion such as this, you are notifying the Court that you represent him. And at this time, you do represent Mr. Warren. And Mr. Gargis, you are dismissed as an attorney in this case.
 "MR. GRAHAM: Your Honor, please, if the Court is notifying me that I am representing him at this point, I would prefer and request that the Court officially appoint me to represent him.
 "BY THE COURT: The Court is not going to appoint you, because you've already informed the Court that you represent him.
"MR. GRAHAM: I represent him on the appeal only.
 "BY THE COURT: Well, no, sir, you can't file a motion for a new trial and say you don't represent him on your motion.
"MR. GRAHAM: I represent him on the motion.
 "BY THE COURT: I have granted it, and you represent him. . . ." (R. 11-12) (Emphasis added).
Subsequent thereto, appellant informed the trial judge that he would challenge Warren's indictment through a motion to quash. He also successfully argued to allow Warren to remain on his original bond pending his new trial. (R 13-15).
At the June 9, 1982, hearing on Warren's motion to quash the indictment, the trial judge, before addressing the merits of the motion, inquired of appellant as to whether he was to represent Warren at trial. We quote from the record:
 "BY THE COURT: I believe Mr. Gargis was released from representing Mr. Warren and Mr. Graham filed a motion with the Court stating he represented him and the motion was granted for a new trial. I would like to know first, Mr. Graham, whether or not you are going to represent him on the trial?
"MR. GRAHAM: Are we on the record now?
"BY THE COURT: Yes, sir.
 "MR. GRAHAM: I will answer that question, Your Honor, just as completely and definite as I can, sir. I got in this case when the man, the defendant Warren, came to my place — my office and hired me to set aside the judgment that he had pled guilty on, which was a six year sentence in this case. I told him that I would make every effort through a motion for a new trial or through appeal, or both — of course, the motion for a new trial is part of the appeal process — to set this verdict aside. And he said, all right, and he agreed to pay me, which he never has paid — he paid a little bit, but he hasn't paid what he promised he would. I came to Court with the motion, filed the motion, and was here at the hearing on the motion. And then the Court, of course, granted the motion as the record shows there, and set aside the judgment. I had always told the Court, and I told my client — I don't know what the record shows about that, but I had intended to explain that I was representing him for the purpose of appeal and for the purpose of that motion only. Now, as I remember it, the record — if I'm incorrect, I'll stand corrected, but as I remember, the Court appointed me, saying that Gargis was being released and that the Court was appointing me to represent the defendant on the trial of the case. And I probably accepted the appointment; I don't remember exactly what I said when the *Page 1003 
Court appointed me. But I think I asked the Court if I was being appointed to be paid for by the State, and I think the Court said `no'. So to answer your question, Judge, I am in this case to represent him by appointment by the Court.
 "BY THE COURT: Mr. Graham, the Court did not appoint you. I made that very clear the last time.
 "MR. GRAHAM: Have you checked the record on that, sir?
 "BY THE COURT: I have it right here — the transcript of it. The Court did not appoint you. When you filed the motion for a new trial, you informed the Court that you represented him, and the motion was granted and the Court does not appoint you.
. . . .
 "MR. GRAHAM: Well, maybe it wasn't an appointment, I was thinking I was ordered by the Court to represent him.
. . . .
 "BY THE COURT: And what I want to know now, Mr. Graham, is whether or not you are going to represent him.
 "MR. GRAHAM: I don't want to represent him, sir, and I'm not representing him unless I'm, by law, representing him, because I've done what I promised him I would do by filing the motion and getting the motion sustained.
 "BY THE COURT: What I want to know, if you'll just answer me, whether or not you are going to represent him on the trial of this case. Now, he is not here today.
 "MR. GRAHAM: Sir, I'm not trying to be coy about it, what I'm saying is this, sir — I don't want to represent him, but now if I'm in there legally and representing him, then I'll go through with my responsibility. My obligation was with him, as I understood from the very beginning, to represent him on the motion for the new trial or for the appeal, or for both — not for the trial.
 "BY THE COURT: Well, do you plan to represent him on trial?
 "MR. GRAHAM: If the Court tells me to, I will, but if the Court will release me, I'd be glad to be released.
 "BY THE COURT: Well, when you filed the motion for the new trial, you notified the Court that you represented him.
"MR. GRAHAM: On that motion.
"BY THE COURT: And the motion was granted.
 "MR. GRAHAM: And that was the end of my representation as far as I was concerned.
"BY THE COURT: No, sir, that's not correct.
 "MR. GRAHAM: Sir, if I'm not correct, then I guess whatever the Court wants me to do, if that obligated me to try the case.
"BY THE COURT: I think it did.
 "MR. GRAHAM: Well, I don't think it did, I differ with the Court.
 "BY THE COURT: Well, what I want to know, do you plan to represent him on trial?
 "MR. GRAHAM: If the Court tells me to, I will represent him, sir. If the Court releases me, I'll be glad to be released.
 "BY THE COURT: Well, I'm just asking you whether or not you —
 "MR. GRAHAM: That's the only way I know how to answer it, because I know if I say something then whatever it is, it is liable to be construed by some people different than the way I mean it. And I'm not — and I'm saying to this Court at this time that I'm not trying to back out of it, if I am, as a matter of fact or a matter of law, representing him. But I'm in the case at this point because of some misunderstanding by somebody along the way in the trial of the case. But I never did contract with him about the case; I contracted with him to file a motion for a new trial, to get the judgment set aside or to appeal.
 "BY THE COURT: Do you plan to represent him in the trial of the case?
 "MR. GRAHAM: I'll do whatever the Court tells me to, that's the only way I can answer it." (R. 15-19) (Emphasis added). *Page 1004 
Appellant explained that he construed the trial judge's statement made to him at the May 3 hearing, where the trial judge had stated that by appellant's filing of the motion for a new trial, he notified the trial court that he represented Warren, as either an order or an appointment to represent him at trial. After a further colloquy between appellant and the trial judge, the following occurred:
 "BY THE COURT: Mr. Graham, don't you know that when you file something like that, that you are representing the party?
"MR. GRAHAM: Well, Your Honor —
 "BY THE COURT: Your conduct is unprofessional as an officer of this court and the Court finds your conduct — the Court is aware of it in this proceeding, it's unprofessional and you have not represented the best interest of your client. And I think I'm obligated to tell you that. It's hard for me to believe you will file something like this and tell the Court you don't represent him.
 "MR. GRAHAM: Well, what did I say — didn't I say that I represented him on — did I ever say I didn't represent him on the appeal or that I didn't represent him on the motion for a new trial.
 "BY THE COURT: I have granted the motion for a new trial.
 "MR. GRAHAM: That's all I ever said I represented him on.
"BY THE COURT: Well —
 "MR. GRAHAM: Where does it say in there, may it please the Court, where does it say in that transcript that I represented him on anything other than the motion for a new trial.
 "BY THE COURT: When you filed it and it was granted, you represented him, in the Court's opinion. And I know Mr. Warren is not here and is not maybe all that smart or anything, and I just don't think he has been represented properly.
 "MR. GRAHAM: Well, I can't help that, if Your Honor please. You're always telling me that, you go out of your way in all these cases and tell me that I'm not doing my job. I think that the Court is prejudiced against me and I can't do anything about it.
 "BY THE COURT: I think you have done it to your client and I think you've hurt him.
 "MR. GRAHAM: I-I-I-I-I've succeeded in what I set out to do, if Your Honor, please, I got the sentence dismissed off his case. That's what he asked me to do, now, if that's unprofessional towards my client, I don't understand that.
 "BY THE COURT: What I want to know is, are you going to represent him on trial, and you say you just represent him on appeal.
"MR. GRAHAM: That's all I represent him on.
 "BY THE COURT: That's all you're going to represent him on?
 "MR. GRAHAM: Unless the Court appoints me or orders me to represent him in the trial.
"BY THE COURT: The Court is not going to appoint you.
"MR. GRAHAM: Well, are you going to order me to?
 "BY THE COURT: I don't think I can order you to, because you've already notified the Court that you represent him.
"MR. GRAHAM: On trial?
 "BY THE COURT: When you filed the motion and it was granted, you notified the Court that you represent him.
"MR. GRAHAM: You mean for the trial, sir?
"BY THE COURT: Yes, sir.
 "MR. GRAHAM: I respectfully disagree with the Court on that. The motion for a new trial is nothing more than asking that the original sentence be set aside.
 "BY THE COURT: Your conduct is contemptuous to this Court and the Court's aware of it. I'll just tell you that now. And if you'd like to respond to it, please do so.
"MR. GRAHAM: Respond to what, sir?
 "BY THE COURT: To my statements I just made — that your conduct is contemptuous. *Page 1005 
 "MR. GRAHAM: Well, if my conduct is contemptuous and the Court is anticipating finding me in contempt, I'd like to have a hearing on it, sir.
 "BY THE COURT: I'm giving you time — you can respond to it right now.
 "MR. GRAHAM: No, sir, I'm respectfully asking the Court if the Court is finding me in contempt of court, I respectfully ask —
 "BY THE COURT: I just said your conduct is contemptuous; I haven't said you are in contempt.
 "MR. GRAHAM: I have nothing else to say at this point, sir, but if that's the Court's opinion about me, that's all right. But if it comes down to a formal citation or formal accusation or a formal finding of contempt, I respectfully request the Court as a lawyer and officer of this court that it be set for a hearing; I'm entitled to a hearing on the matter, and to have representation to see if my conduct has been contemptuous or not.
 "BY THE COURT: Okay, the Court will set a time and place for a hearing, and you may subpoena witnesses in your behalf and have counseling.
"MR. GRAHAM: Hearing on what, sir? For contempt?
"BY THE COURT: For your contemptuous conduct.
 "MR. GRAHAM: Well, I ask the Court to serve me in writing, sir.
 "BY THE COURT: I'm doing it differently, Mr. Graham. The Court finds you in contempt of court for your conduct. As an officer of this court your conduct is unprofessional in your representation of Mr. Warren. You are fined one hundred dollars and you are barred from practicing law in this court for a period of 180 days.
 "MR. GRAHAM: I ask for an appeal bond — I respectfully ask for an appeal bond at this time on this procedure, and I would like to say I have been denied due process of law; I was not brought here today cited for contempt and the record shows that we had nothing more than just a discussion here. And I would respectfully ask for a bond to be set and for me to get counsel and for me to be notified of what I'm charged with as far as the contempt is concerned so that I might, like anybody else, have the right to due process of law.
 "BY THE COURT: The Court is going to set out this order in writing and I will contact the authorities in Montgomery concerning this matter, and a copy of this will be mailed to them. And I think it's the Court's duty and obligation to protect your client as best as it can and I think the Court is obligated. You may appeal and I will set a bond later after I send out an order. Court is in recess.
 "MR. GRAHAM: We have been carrying on here — where do we stand on this case?
 "BY THE COURT: This case will be continued. You are released from representing this man and Mr. Warren will be notified of the actions of this Court and another lawyer will be appointed to represent him.
 "MR. HUDSON: I assume by that, it will not be tried next week?
"BY THE COURT: That is right.
 "MR. HUDSON: In the order, you just stated Mr. Graham was being barred from practice —
 "BY THE COURT: This order will be put in the Circuit Clerk's Office to notify any and all clients on cases he has that they are not to be tried the next term of court and he is barred for 180 days from practicing in this court." (R. 27-31) (Emphasis added).
Although a part of the record on appeal, we have not considered as evidence the affidavits of Warren and Gargis, filed in support of appellant's motion to stay the execution of the trial court's June 10, 1982, written order of contempt.[1] *Page 1006 
 I
At the outset, it is clear that jurisdiction of this cause is properly vested in this court. See Tetter v. State,358 So.2d 1046 (Ala. 1978). Furthermore, there is no doubt that if appellant's conduct was contemptuous, such was of the direct criminal form. Charles Manufacturing Co. v. United FurnitureWorkers, 361 So.2d 1033 (Ala. 1978); Carroll v. State,350 So.2d 723 (Ala.Cr.App. 1977).
The proper remedy in which to seek a review of an order made in a proceeding for contempt of court is by habeas corpus if the contemner is in jail, or by certiorari if he is not. Knightv. State ex rel. Butler, 288 Ala. 428, 261 So.2d 750 (1972);Killingsworth v. Killingsworth, 284 Ala. 524, 226 So.2d 308
(1969); Carroll, supra. Although the instant cause is before this court by way of appeal and not certiorari, we will treat it as properly presented.
 II
Contrary to appellant's assertions in brief, he is not entitled to any due process guarantees such as notice of the charges and a reasonable opportunity to address them, assistance of counsel, the right to call witnesses and confront his accuser, and the right to give testimony as such protections are applicable only where the contempt is of the indirect form. Carroll, supra; Ex parte Stephenson, 34 Ala. App. 1, 40 So.2d 713 (1947), aff'd, 252 Ala. 316, 40 So.2d 716
(1949). The courts may summarily punish for a direct contempt as the personal knowledge of the trial judge, in whose presence the contemptuous conduct occurred, substitutes for evidence.Carroll, supra; In Re Tarpley, 293 Ala. 137, 300 So.2d 409
(1974); See Brutkiewicz v. State, 280 Ala. 218, 191 So.2d 222
(1966).
 III
Appellant challenges the legality of the order of contempt, asserting that the record does not support such.
Under § 12-1-8 (1) Code of Alabama 1975, the courts of this state have the power to inflict summary punishment for "disrespectful, contemptous, or insolent behavior in court, tending in any way to diminish or impair the respect due to the judicial tribunals or to interrupt the due course of trial." The punishment for criminal contempt may be found in § 12-11-30
(5) Code of Alabama 1975.
The scope of review on the issue of contempt "is limited to questions of law and, if there is any evidence to support its finding, the judgment of the trial court will not be disturbed." Murphy v. Murphy, 395 So.2d 1047, 1049
(Ala.Civ.App. 1981); See Ex parte Abercrombie, 277 Ala. 479,172 So.2d 43 (1965); Smith v. Smith, 380 So.2d 897
(Ala.Civ.App. 1980).
After a careful review of the evidence, we are of the opinion that the appellant's contention must be sustained. While the record establishes that appellant continued to represent Warren after disposition of the motion for a new trial, it is also clear that appellant had not been retained by Warren for such. It is without dispute that Warren had not employed appellant as counsel in the event of a re-trial. Warren's statements are clear to the conclusion that appellant had been retained for the specific and limited purpose of representing him "on motion for a new trial and on appeal." Thus, the only justification for appellant's seemingly inconsistent positions is that he was under the belief that the trial court had ordered him to represent Warren. Such a conclusion finds further support in the fact that the trial court refused to appoint appellant as counsel for Warren. *Page 1007 
There is no doubt as to appellant's position concerning the scope and extent of his representation of Warren. Throughout all the proceedings, appellant maintained that his employment as Warren's counsel was limited solely to the filing of the motion for a new trial and on appeal. With the granting of the motion, the latter possibility was extinguished.
While the misunderstanding between Judge Tompkins and appellant possibly could have been eliminated by better communication between appellant and Gargis and Judge Tompkins concerning his retention by Warren, such does not alter the conclusion that the conduct forming the basis of the trial court's order of contempt was not contemptuous under § 12-1-8
(1). The record reveals no conduct by appellant which could be termed "disrespectful" or "insolent". While we do not have the benefit of observing first-hand the demeanor of appellant, the record, which is the only legal evidence that we may consider, does not suggest it to have been rude, discourteous, or disrespectful to the dignity of the court.
 IV
Lastly, we note that the punishment for contempt, as established in § 12-11-30 (5) states that, "The circuit court may punish contempts by fines not exceeding $100.00 and by imprisonment not exceeding five days. The power of the circuit court to enforce its orders and judgments by determinations of civil contempt shall be unaffected by this section."
It has been held that the statutory limitations on punishment for contempt apply only to criminal contempt, and not to civil contempt. Ex parte Griffith, 278 Ala. 344, 178 So.2d 169
(1965); Ex parte Abercrombie, supra; Hancock v. Bell, 274 Ala. 390, 149 So.2d 842 (1963); Ex parte Hill, 229 Ala. 501,158 So. 531 (1935).
The above statutory limitations have existed in what is now the State of Alabama since 1807, when an act of territorial legislation by the Mississippi Territory was passed containing such. Subsequent thereto, our first Constitution, and each adopted thereafter, recognized the legislative limitations upon the extent of the power of the courts to punish for contempts.[2]
Thus we find no reason now to question such and consider it a part of the policy of the state. Hill, supra; See also 17 C.J.S. Contempt §§ 90, 98-99 (1963).
As stated in A.R.D.E. 1 (a), "Any attorney admitted to practice law in this state and any attorney specially admitted . . . is subject to the exclusive disciplinary jurisdiction of the Supreme Court of Alabama and the disciplinary board of the Alabama state bar. . . ."
In section (b) of A.R.D.E.1, it is expressly noted that the rules of disciplinary enforcement shall not be "construed to deny to any court such powers as are necessary for that court to maintain control over proceedings conducted before it, such as the power of contempt."
Thus, the circuit courts of this state have the power to punish for criminal contempt, and, through the exercise of their discretion, punish for such to the extent established by § 12-11-30 (5). Hill, supra. They do not have the inherent power to prohibit an attorney from practicing law before it. Such is vested in the Supreme Court and the state bar disciplinary board. A.R.D.E. 1; See Taylor v. Hayes,494 S.W.2d 737 (Ky. 1973), rev'd on other grounds, 418 U.S. 488,94 S.Ct. 2697, 41 L.Ed.2d 897 (1974).
Consequently, the trial court had no power to prohibit this appellant from practicing law before it, based on this record.
In view of this, the order of the circuit court finding the appellant to be in direct criminal contempt is due to be, and is, hereby reversed and rendered.
REVERSED AND RENDERED.
All the Judges concur.
[1] Nevertheless, we have found certain statements contained in the affidavits relevant. In his affidavit, Warren stated that appellant inquired of him as to whether any other lawyer was representing him on appeal or on a motion for a new trial. Warren replied that no one was representing him except Alan Gargis, whom had been appointed to represent him at trial. Warren further stated that he had employed appellant for the specific purpose of setting aside his recent conviction. He stated that at the May 3 hearing on his motion for a new trial, he had not employed appellant as his attorney in the event of a re-trial. (R. 112-115).
In his sworn affidavit, Alan Gargis stated that at the May 3 hearing, appellant conducted himself in a professional and dignified manner. Gargis stated that the dispute between Judge Tompkins and appellant was handled in a professional and orderly manner. (R. 116).
[2] Currently, in addition to the punishment limitations imposed upon the circuit courts, there also exists limitations upon the supreme court, intermediate appellate courts, district courts, probate courts, municipal courts, and juvenile courts. See Ala. Code §§ 12-2-7 (5), -3-11, -12-6, -13-9, -14-31, -15-12 (1975).
 *Page 409