I must respectfully dissent. The defendants' First Amendment rights of freedom of speech and freedom of the press do conflict with the psychiatrist-patient privilege in this case, and I would hold that the defendants' constitutional rights outweigh this statutory privilege.
As the United States Supreme Court stated in Connick v.Myers, 461 U.S. 188, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708
(1983):
 "The First Amendment 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957); New York Times Co. v. Sullivan, 376 U.S. 254, 269
[84 S.Ct. 710, 720, 11 L.Ed.2d 686] (1964). '[S]peech concerning public affairs is more than self-expression; it is the essence of self-government.' Garrison v. Louisiana, 379 U.S. 64, 74-75 [85 S.Ct. 209, 215-216, 13 L.Ed.2d 125] (1964). Accordingly, the Court has frequently reaffirmed that speech on public issues occupies the ' "highest rung of the hierarchy [sic] of First Amendment values," ' and is entitled to special protection. NAACP v. Claiborne Hardware Co., 458 U.S. 886, 913 [102 S.Ct. 3409, 3425, 73 L.Ed.2d 1215] (1982); Carey v. Brown, 447 U.S. 455, 467
[100 S.Ct. 2286, 2293, 65 L.Ed.2d 263] (1980)."
Speech of public concern is at the core of the First Amendment's protection and it is *Page 418 
speech that "matters." See Philadelphia Newspapers, Inc. v.Hepps, 475 U.S. 767, ___, 106 S.Ct. 1558, 1565, 89 L.Ed.2d 783
(1986).
The majority states, "Each of these cases from the United States Supreme Court speaks to the burden of proof in defamation cases. None of them extends to the media a constitutional right to information not otherwise available to others." This is true; however, the psychiatrist-patient privilege in this case impacts directly on the substantive area of liability for defamation. "[T]o refuse evidence is to refuse to hear the cause." Edmund Burke, quoted in I Wigmore, Evidence
§ 10, at 672 (Tillers rev. 1983). "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." United States v. Nixon,418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).
In this case, the evidence that is sought by the defendants goes directly to the burden of proof. This evidence has direct bearing on the truth or falsity of the defendants' statements. This is not merely a discovery matter; the evidence sought here goes to the very substance of plaintiff's case and of the defendants' defense.
Code 1975, § 34-26-2, states that confidential relations and communications between a psychiatrist and client "are placed upon the same basis as those provided by law between attorney and client." In speaking of the attorney-client privilege, this Court has held that there are limitations on the application of the rule of privileged communications. Ex parte Griffith,278 Ala. 344, 350, 178 So.2d 169, 176 (1965), cert denied,382 U.S. 988, 86 S.Ct. 548, 15 L.Ed.2d 475 (1966). So too, there are limitations on the psychiatrist-patient privilege. It is not an absolute privilege; it is a limited, evidentiary privilege that was created to protect and encourage confidential communications between a psychiatrist and patient by preventing the psychiatrist from making that information public. This exclusion of evidence is an expression of public policy. Seegenerally 81 Am.Jur.2d, Witnesses, § 231 (1976). However, that expression of public policy must yield when it comes into conflict with a higher expression of public policy; namely the United States Constitution.
Commentators have noted that a limited, evidentiary privilege should give way to any higher, necessary demands of justice.See McCormick on Evidence, §§ 77, 87 (3d ed. 1984); Comment,The Attorney-Client Privilege in Alabama, 28 Ala.L.Rev. 641, 675 (1977). "Evidentiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances." Herbert v. Lando, 441 U.S. 153,175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979).
The majority recognizes that "There may be instances where the media defendant would be allowed to discover privileged communications, but that case is not now before us." Since the majority is denying the defendants access to the determinative evidence on a determinative substantive issue, I cannot imagine what "instances" would allow the media defendant to discover a third party's privileged communications in a defamation case. If this is not the case, then there will probably never be one. For all practical purposes, the majority has made the psychiatrist-patient privilege absolute under these circumstances. This Court has stated that the rule of privilege is defensive, not offensive. Ex parte Griffith, supra,278 Ala. at 351, 178 So.2d at 176. Petitioner is attempting to use his client's shield as a sword against the defendants. When it strikes against the defendants' First Amendment shield, that sword must shatter.
The United States Supreme Court has held that evidentiary privileges must give way when they come into conflict with constitutional rights. In Davis v. Alaska, 415 U.S. 308,94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court held that the confidentiality of a juvenile's record of delinquency is an important interest but that the Sixth Amendment's right of confrontation is paramount to the policy of protecting a juvenile offender. "The State's policy interest in protecting the confidentiality *Page 419 
of a juvenile offender's record cannot require [the] yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness."Davis, 415 U.S. at 320, 94 S.Ct. at 1112. The dissent in Davis stated, "[T]here is no constitutional principle at stake here. This is nothing more than a typical instance of a trial court exercising its discretion to control or limit cross-examination." 415 U.S. at 321, 94 S.Ct at 1112 (White, J., dissenting). Similarly, in the present case, the majority has treated this as nothing more than a discovery issue and has ignored the substantive impact this discovery issue will have on the defendants' First Amendment rights.
In Smith v. Daily Mail Publishing Co., 443 U.S. 97,99 S.Ct. 2667, 61 L.Ed.2d 399 (1979), the United States Supreme Court, relying on Davis v. Alaska, held that the confidentiality of a juvenile offender's records must yield to a media defendant's First Amendment rights. Both Davis and Smith dealt with a third party's privilege, and that privilege had to yield when it came into conflict with a constitutional right.
A witness's confidential psychiatric records were ordered disclosed when that person's privacy interest came into conflict with a defendant's right to cross-examine, inUnited States v. Lindstrom, 698 F.2d 1154 (11th Cir. 1983).
 "Broad-brushed assertions of the societal interest in protecting the confidentiality of such information cannot justify the denial of these defendants' right to examine and use this psychiatric information to attack the credibility of a key government witness. A desire to spare a witness embarrassment which disclosure of medical records might entail is insufficient justification for withholding such records from criminal defendants on trial for their liberty."
698 F.2d at 1167.
The Eleventh Circuit Court of Appeals in Lindstrom relied uponDavis v. Alaska.
First Amendment rights prevail over evidentiary privileges as much as Sixth Amendment rights do. "The important rights created by the First Amendment must be considered along with the rights of defendants guaranteed by the Sixth Amendment."Smith v. Daily Mail Publishing Co., 443 U.S. at 104,99 S.Ct. at 2671.
The majority relies on Rhinehart v. Seattle Times Co.,98 Wn.2d 226, 654 P.2d 673 (1982), affirmed, 467 U.S. 20,104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), for the proposition that the media receive no greater constitutional protections than the general public. The majority ignores the fact that the Washington Supreme Court allowed the media defendants there to discover the privileged information of third parties in a defamation suit:
 "Turning to the plaintiffs' cross appeal, the major contention is that requiring disclosure of membership lists, donors and benefactors violates the rights of privacy and the associational rights of these persons. As should be clear from our previous discussion, certain invasions of those rights are necessary to enable the courts to render a just decision upon the relevant facts.
". . .
 "The plaintiffs, as the defendants point out, are attempting to assert a privilege to withhold evidence in a private suit where they seek damages based upon the allegedly privileged information. We have reviewed the cases cited in their brief and find none which supports the theory in the circumstances of this case."
98 Wn.2d at 257-58, 654 P.2d at 690-91.
Even without discussing the defendants' First Amendment rights, the Washington Supreme Court held that the privileged information was discoverable.
Chronicle Publishing Co. v. Superior Court, 54 Cal.2d 548,7 Cal.Rptr. 109, 354 P.2d 637 (1960), is also no help to the majority. Chronicle Publishing Co. was decided in 1960, well before the current First Amendment analysis was developed by the United States Supreme Court in New York Times Co. v.Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and the cases that followed and built upon *Page 420 New York Times. No First Amendment right was ever raised by the defendant in Chronicle Publishing Co.
This case appears to present a question of first impression, not only for this Court, but for every jurisdiction in the country. I do not believe that this case can be disposed of as simply a discovery matter, especially in light of the fact that speech on public issues is the highest of First Amendment values and is entitled to special protection. Connick v. Myers, supra. Perhaps the United States Supreme Court will have to resolve this unique issue. It is my opinion that the psychiatrist-patient privilege of § 34-26-2 does impinge upon the defendants' First Amendment rights in this case, and, therefore, I would deny Dr. Rudder's petition for writ of mandamus.
HOUSTON and STEAGALL, JJ., concur.